[No. B084798. Second Dist., Div. Five. Aug. 9, 1995.]

NORMAN BERNSTEIN et al., Plaintiffs and Appellants, v.
CONSOLIDATED AMERICAN INSURANCE COMPANY et al.,
Defendants and Respondents.

764

COUNSEL

Mazursky, Schwartz & Angelo and Debra J. Wegman for Plaintiffs and Appellants.

Boornazian, Jensen & Garthe, Bruce H. Winkelman and Jaqueline Jordan Leung for Defendants and Respondents.

OPINION

ARMSTRONG, J.—Plaintiffs appeal the stipulated judgment entered following grant of summary adjudication of plaintiffs' causes of action for breach of contract and breach of the covenant of good faith and fair dealing in favor of defendant Consolidated American Insurance Company (Consolidated). Plaintiffs contend that they were entitled to a defense of certain third party claims pursuant to the terms of the contractual liability endorsement of their general liability policy issued by Consolidated. It is this contention which is the subject of this appeal.

## FACTS

Plaintiffs Norman and Henrietta Bernstein and Fred and Rosella Bernstein (the Bernsteins) were the principal shareholders of Century Conditioning

Corp. (Century), a California corporation.[1] Century was a full-service mechanical contractor, whose primary business was the installation of plumbing systems, usually as a subcontractor on large-scale construction projects.

In 1982, the City of Santa Monica (the City) retained De Leuw, Cather & Company (De Leuw) as architects to expand and upgrade an existing City bus terminal (the Project). The City awarded the construction contract to Mallcraft, Inc., who in turn awarded a subcontract to Century. Pursuant to that subcontract, Century was responsible for installation of all air conditioning, heating, plumbing, fuel tanks and pipeline systems. The total value of the Century subcontract was $827,000, although with change orders the total eventually exceeded $1 million. As required by the subcontract, Century obtained a performance bond from its surety, Industrial Indemnity Company (Industrial), in the amount of $827,000. The Project was completed and accepted by the City in 1985.

In 1986, the City sued De Leuw, alleging numerous design defects and construction flaws (the City action). Believing that these "design defects" were in reality simply cost overruns from disputed change orders implemented by Mallcraft, De Leuw cross-complained against Mallcraft.

In September 1987, leaks in the underground fuel pipes installed by Century were discovered. The City determined that holes caused by corrosion had developed in the pipes, causing fuel to leak and causing damage to the surrounding soil. Consequently, the City filed an amended complaint naming Mallcraft, alleging negligent installation of the pipes and claiming damages for the clean up of the fuel leaks and the replacement of the corroded pipes.

Mallcraft cross-complained against Century and one of its principals, Norman Bernstein, for indemnity. Century and Norman Bernstein tendered defense of the suit to all of their general liability insurers during the 1982 to 1985 period during which the Project took place, including defendant Consolidated. Consolidated accepted the tendered suit subject to a reservation of rights based on its concern that there was no covered occurrence during Consolidated's policy period of November 1984 to November 1985.[2]

Seven months after it undertook defense of the Mallcraft cross-complaint, Consolidated discovered that Century was a suspended corporation and

---

[1] Also named as plaintiffs were JAS Air Service, a California corporation, and Fred Norman Company, a California partnership, both of which were entities owned and controlled by the Bernsteins.

[2] Portions of the general liability policy appearing in the appellate record are illegible, and thus we do not know the specific policy exclusions which might apply to Mallcraft's claim. We note only that Consolidated did not reserve its rights based on any policy exclusion.

withdrew its defense of the company, claiming that suspension was a breach of the cooperation clause in the policy. Consolidated continued to defend Norman Bernstein until he was dismissed, without prejudice, in April 1990.[3]

Contemporaneously with Mallcraft's dismissal of Norman Bernstein from the City action, Mallcraft filed suit against Century; Industrial, who had provided Century's performance bond on the Project; and De Leuw, the Project architect (the Mallcraft action). The basis of Mallcraft's claim against Industrial was the latter's "guaranty for the complete performance and fulfillment of all undertakings, terms and conditions of that subcontract between CENTURY CONDITIONING CORP. and MALLCRAFT, INC. . . ." The complaint stated that the purpose of the performance bond was "to protect MALLCRAFT from any claims for damages that may be asserted in the future that arise out of the work performed by CENTURY pursuant to the Subcontract," and alleged that Industrial was liable to Mallcraft for Century's "failure to well and truly perform and fulfill all undertakings, covenants, terms and conditions of the Subcontract . . ." and "for the damages caused by CENTURY's installation of the fuel piping system . . . ." Thus, as alleged by Mallcraft, the bond was subject to both contract claims and tort claims. Industrial denied that its bond was liable for tort damages to third party property.

In July 1990, Industrial cross-complained against all four of the Bernsteins and two of their related businesses, all of whom were signatories to a 1978 indemnification agreement with Industrial (the Contract of Indemnity). Industrial alleged that the Contract of Indemnity covered any claim made on the bonds issued on Century's work, including Mallcraft's claims of negligence.[4]

On July 13, 1990, the Bernsteins tendered defense of Industrial's cross-complaint to Consolidated. Consolidated denied both coverage and defense

---

[3]The City action was settled in November 1990. Mallcraft, through its insurer, contributed $500,000 to that settlement, and De Leuw paid an additional $150,000.

[4]The Contract of Indemnity in pertinent part provided that the Bernsteins would indemnify Industrial "from and against any and all liabilities, claims, demands, losses, damages, costs, counsel fees, judgments, and expense of whatever kind or nature, that [Industrial] shall or may for any cause at any time sustain or incur by reason of or in consequence of the said bonds or any renewal thereof or any new bonds issued in continuation thereof or as a substitute therefor or in connection with any litigation, investigation, or other matters connected therewith. . . . [Industrial] shall be entitled to charge said Indemnitors, and said Indemnitors, and each of them, agree to pay for any and all disbursements made by it in good faith with respect to the matters herein contemplated by this agreement, under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. . . ."

on August 20, 1990, claiming that the new action was based solely on the issuance of the performance bond and the obligations of the Contract of Indemnity. Consolidated concluded that the cross-complaint was therefore founded solely on contract, denied that the bond and Contract of Indemnity covered tort damages, and maintained that the claims were not covered by the insurance policy.

The Bernsteins retained counsel at their own expense to defend the Industrial cross-complaint.[5] Thereafter, they sued Consolidated for breach of the insurance contract, breach of the implied covenant of good faith and fair dealing, fraud, intentional and negligent infliction of emotional distress, and declaratory relief. Consolidated moved for summary adjudication, contending that, on the undisputed facts, there was no potential for coverage under the Bernsteins' insurance policy, and thus no liability could flow from Consolidated's refusal to defend the Industrial cross-complaint. After initially denying the motion, the trial court agreed with Consolidated and granted summary adjudication of the breach of contract and bad faith claims. The parties thereafter stipulated to entry of judgment. The Bernsteins appeal the trial court's conclusion that the insurance policy provided no coverage for any damages which might be awarded to Industrial on their cross-complaint. We affirm the judgment.

## DISCUSSION[6]

On review of a summary adjudication, this court conducts a de novo examination to determine whether the moving party is entitled to judgment as a matter of law, or whether there are any genuine issues of material fact requiring a trial. (*Mata* v. *City of Los Angeles* (1993) 20 Cal.App.4th 141, 147 [24 Cal.Rptr.2d 314].) The moving party's affidavits are to be strictly construed, while the opponent's affidavits are to be liberally construed, and all doubts are to be resolved against the moving party "due to the drastic nature of the procedure." (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) Finally, this court is not bound by the stated reasons of the trial court. "[W]e review the ruling, not its rationale." (*Ibid.*)

---

[5]Our review of the record does not reveal the result of the Mallcraft action, although the Bernsteins represent in their opening brief that they "were successful in ultimately resolving the Mallcraft suit at a fraction of what had been originally claimed, . . ."

[6]Initially, we note that Consolidated's motion to dismiss this appeal for lack of jurisdiction was denied on November 4, 1994. We will not repeat our reasons for denying that motion here.

## 1. *Consolidated's duty to defend*

■  The Supreme Court has recently reiterated the nature of an insurer's duty to defend its insured, stating: "In *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076 [17 Cal.Rptr.2d 210, 846 P.2d 792] (*Horace Mann*), we observed: '[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].) As we said in *Gray*, "the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." [Citations.] Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded. [Citations.]' (*Horace Mann*, *supra*, 4 Cal.4th at p. 1081.)" (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) The Court in *Montrose* went on to state that "[i]mposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf [citation]." (*Id.* at p. 295.)

In order to advance the foregoing considerations, the insurer's obligation to defend its insured against third party claims must be determined at the time the complaint is tendered to the insurer. (*Montrose Chemical Corp.* v. *Superior Court*, *supra*, at p. 295; *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 [222 Cal.Rptr. 276].) Furthermore, ". . . facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." (*Montrose*, *supra*, at p. 296.)

Notwithstanding the foregoing, ". . . the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risks covered by the policy [citations]." (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].) Moreover, " 'In construing the language of an insurance policy, a court should give the words used their plain and ordinary meaning, unless the policy clearly indicates to the contrary . . . . When the language is clear, a court should not give it a strained construction to impose on the insurer a liability it has not assumed . . . .' [Citation.]" (*St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].)

The issue on appeal is whether the Bernsteins were entitled to a defense of the Industrial cross-complaint. The answer to this question turns on the

interpretation of two contracts: Consolidated's general liability policy, and the Contract of Indemnity between the Bernsteins and Industrial, the pertinent language of which appears in footnote 4, *ante*.

The relevant coverage provisions of the policy are as follows:

"I.   COVERAGES A and B Business Liability

"1.   To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of

"́.  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"B.   damage to or destruction of property of others (hereinafter called Property Damage)."

A "contractual liability" endorsement to the policy provided:

"I.   CONTRACTUAL LIABILITY

"The term 'legally obligated' under Coverage A and B (Business Liability) is amended to read: [¶] The term 'legally obligated' shall include the named insured's contractual liability, but ONLY with respect to liability of others for such damages assumed by the named insured under a contract which became binding and effective before such damages were sustained."

Plaintiffs contend that under the terms of the policy, and particularly the contractual liability endorsement, they were entitled to a defense against Industrial's cross-complaint. Plaintiffs come to this conclusion by way of the following analysis: the City suffered property damage due to the leak in the pipes installed pursuant to Mallcraft's construction contract; Mallcraft in turn alleged that Century was responsible for the faulty pipes which caused the soil to be contaminated with fuel; Consolidated impliedly acknowledged its potential liability for the City's cleanup costs, since it undertook to defend Century and Norman Bernstein in Mallcraft's suit against them; Mallcraft subsequently sued Industrial for reimbursement of precisely the same damages as those sought in the earlier Mallcraft cross-complaint against Century and Norman Bernstein; the Bernsteins were liable, if at all, on the Mallcraft claim by reason of their assumption of any and all damages to which Industrial may become liable pursuant to the Contract of Indemnity; and the Contract of Indemnity constitutes "contractual liability" of the Bernsteins for which they are covered under the policy by reason of the contractual liability endorsement. That is to say, by executing the 1978

Contract of Indemnity, they became, in the words of the endorsement, " 'legally obligated' . . . with respect to liability of others for such damages assumed by the named insured under a contract which became binding and effective before such damages were sustained." Accordingly, the policy potentially covered the property damage suffered by the City, and Consolidated therefore had a duty to defend the Bernsteins, even if Mallcraft's complaint against Industrial ultimately proved groundless.

Both parties agree that the insurance policy's contractual liability endorsement applies only to the contractually assumed *tort* liability of others. (See, e.g., *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 998 [216 Cal.Rptr. 796] [contractual liability covers "third party tort liabilities that the insured assumed by contract."]; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601 [155 Cal.Rptr. 870] (*Devonshire*).) Tort liability, in turn, has been defined as liability arising by operation of law, as opposed to contractual liability, which is created by agreement of the parties. (*Devonshire, supra*, at pp. 609-610.) The parties differ, however, in their characterization of the type of liability assumed by the Bernsteins under the Contract of Indemnity. Thus, the question presented is: does the third party claim of Mallcraft against Industrial sound in tort or contract?

The Bernsteins argue that the Mallcraft action seeks tort damages from Industrial for Century's negligence in performing the subcontract. However, the relevant inquiry is not the nature of the damages which the City recovered from Mallcraft, and for which Mallcraft is seeking reimbursement. Rather, the question is on what basis does Mallcraft claim a right to recover from Industrial? And the answer is clear: the sole premise for Industrial's liability to Mallcraft is the performance bond, a contractual obligation. That is to say, but for Industrial's contractual agreement to be liable to Mallcraft under the conditions set forth in the performance bond, Mallcraft would have no cause of action against Industrial. Whether the terms of the performance bond were purportedly breached by reason of Century's negligence in performing the subcontract, or due to Century's intentional misconduct, or for any other reason, is of no consequence. Industrial's liability to Mallcraft is not tort liability, arising by operation of law, but contractual liability, based solely on the agreement of the parties. (See, e.g., *Devonshire, supra*, 93 Cal.App.3d 601 [insured's assumption of insurer's obligations under an insurance policy is ex contractu, not ex delicto]; *Insurance Co. of the West* v. *Haralambos Beverage* Co. (1987) 195 Cal.App.3d 1308 [241 Cal.Rptr. 427] [insured's assumed contractual liability not covered; underlying action premised on breach of contract].) Because any damages awarded as a result of

the Mallcraft action would necessarily be based on the performance bond, and would therefore be in the nature of contract damages, the contractual liability endorsement to the Bernsteins' general liability policy does not actually or potentially cover any damages they may sustain by reason of Industrial's cross-complaint.[7]

For the reasons specified herein, Consolidated correctly concluded, based on the allegations of Industrial's cross-complaint together with all facts known to it at the time of the Bernsteins' tender of their claim, that there was no potential for coverage under the Bernsteins' insurance policy. Consequently, Consolidated owed the Bernsteins no duty to defend the cross-complaint, and did not breach the insurance contract by refusing the Bernsteins' demand. Because a prerequisite to an actionable breach of the implied covenant of good faith and fair dealing is the denial of benefits due under the policy (*Love* v. *Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246]; *California State Auto. Assn. Inter-Ins. Exchange* v. *Superior Court* (1986) 184 Cal.App.3d 1428, 1433 [229 Cal.Rptr. 409]), the trial court's grant of summary adjudication was proper.

### 2. *The trial court's jurisdiction*

A hearing on Consolidated's motion for summary adjudication was held on January 15, 1993. On that date, the court entered a minute order denying Consolidated's motion without prejudice. The court did not, however, "specify one or more material facts raised by the motion as to which the court has determined there exists a triable controversy," nor "specifically refer to the evidence proffered in support of and in opposition to the motion which indicates that a triable controversy exists," as required by Code of Civil Procedure section 437c, subdivision (g). The proposed order prepared by the Bernsteins did not rectify these deficiencies. Consequently, Consolidated objected to the proposed order prepared by the Bernsteins and sought a clarification of the court's minute order.

In response to Consolidated's motion for clarification, the court issued a memorandum of decision and order dated June 4, 1993. After a lengthy and

---

[7]Consolidated's argument that there is no potential for coverage because Industrial's cross-complaint alleges a breach of contract is too facile. The Bernsteins' liability is not, as Consolidated maintains, a direct result of the *breach* of the Contract of Indemnity; rather it is the direct result of the *execution* of the Contract of Indemnity. That is to say, it is the contractual assumption of the liability of another, the very circumstance potentially covered by the contractual liability endorsement of the policy. And by definition, the tort liability of others assumed by contract sufficient to invoke the contractual liability provision of the insurance policy will, in Consolidated's parlance, "sound purely in contract." Thus, that Industrial's cross-complaint against the Bernsteins alleges a breach of contract is not the end of the inquiry; *any* claim under the contractual liability endorsement of the policy will be one based on contract.

thoughtful discussion, the court granted Consolidated's motion for clarification, and also granted Consolidated's motion for summary adjudication, holding that "(1) Defendant Consolidated had no duty to defend Plaintiffs in the Industrial action; (2) Defendant Consolidated has no duty to indemnify Plaintiffs with regard to the Industrial action; and (3) Defendant Consolidated did not breach its insurance contract with Plaintiffs."

■ The Bernsteins maintain that the trial court was without jurisdiction to issue the latter order, since the procedures set forth in Code of Civil Procedure section 1008 regarding motions for reconsideration were not followed. We find no merit to this contention.

First, we note that the minute order denying Consolidated's motion for summary adjudication failed to comply with the requirements of Code of Civil Procedure section 437c, subdivision (g). Thus, Consolidated's motion for clarification was appropriate. Moreover, the very purpose of Code of Civil Procedure section 437c, subdivision (g) is to require the trial court to articulate the basis for its ruling on summary adjudication. It is evident that, when the trial court undertook that task and attempted to identify the disputed factual issues requiring a trial, it was unable to do so. Consequently, it corrected its prior erroneous ruling denying Consolidated's summary adjudication motion. In so doing, the requirements of Code of Civil Procedure section 437c were met. Moreover, the court was not entertaining a motion of Consolidated for reconsideration of the prior ruling, but was correcting an erroneous ruling on its own motion. ■ "Until entry of judgment, the court retains complete power to change its decision as the court may determine; it may change its conclusions of law or findings of fact. [Citation.]" (*Nave* v. *Taggart* (1995) 34 Cal.App.4th 1173, 1177 [40 Cal.Rptr.2d 714].) Code of Civil Procedure section 1008 does not preclude the actions taken by the trial court in this case.

DISPOSITION

The judgment is affirmed.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied August 30, 1995, and appellants' petition for review by the Supreme Court was denied November 29, 1995.