[No. B140274. Second Dist., Div. Seven. May 9, 2001.]

S. ANDREW SCHWARTZ et al., Plaintiffs and Appellants, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and
Respondent

## COUNSEL

David Hoffman for Plaintiffs and Appellants.

Horvitz & Levy, David M. Axelrad, Mitchell C. Tilner; LHB Pacific Law Partners, Clarke B. Holland, Stephan T. Pastis and Andrean Kalemis for Defendant and Respondent.

## OPINION

## BOLAND, J.*—

### INTRODUCTION

This case asks us to determine the contractual obligations of an excess insurer that has notice of competing claims that may exceed the policy limits of the excess insurance coverage. In that situation, the question is whether the excess insurer may pay full benefits to the first insured who has exhausted the limits of the primary insurance coverage, or whether the insurer has a duty to protect the interests of the other insured who has not exhausted the primary insurance and is not yet entitled to claim excess insurance benefits.

We conclude that an excess insurer, with notice of potentially competing claims that exceed policy limits, has an obligation to treat both insureds fairly. That obligation encompasses the duty to refrain from favoring one insured over the other and from impairing either insured's right to benefits. Evidence that the excess insurer paid full benefits to one insured with knowledge of the other insured's competing claim to the same pool of funds may establish a breach of that duty, precluding summary judgment for the insurer.

### BACKGROUND AND PROCEDURAL HISTORY

In July 1994, appellants S. Andrew Schwartz and Amy Schwartz, together with Elliot and Linda Weinstein, were riding in the Schwartzes' limousine

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution

when it collided with a vehicle driven by an uninsured motorist. Both Andrew Schwartz and Elliot Weinstein were injured in the collision.

The Schwartzes had two insurance policies containing uninsured motorist coverage. The first was a primary policy with United Services Automobile Association (USAA) providing uninsured motorist coverage limits of $500,000 per person and $1 million per accident. The second was an umbrella policy with respondent State Farm Fire and Casualty Company providing excess uninsured motorist coverage limits of $2 million. Both policies extended coverage to the Weinsteins as passengers in the Schwartz vehicle. The State Farm excess policy applied "only when . . . there is payment by your underlying coverage."[1]

Both the Schwartzes and the Weinsteins submitted claims under the uninsured motorist provisions of both policies. The Schwartzes made a demand for arbitration on both carriers in June 1995. State Farm participated in discovery and attended every deposition. The Weinsteins agreed to arbitrate their claims before retired Superior Court Judge James G. Kolts, and the Schwartzes agreed to arbitrate their claims before a different arbitrator.

The Weinsteins obtained full payment of insurance benefits from the primary insurer, USAA, on April 18, 1997. When advised that USAA had paid its policy limits to the Weinsteins, the Schwartzes' counsel wrote his counterpart for State Farm in May and June 1997 reminding State Farm that his clients had already made policy limits demands on both carriers, and stating his belief that State Farm must either reserve funds to fully compensate the Schwartzes up to policy limits or interplead that amount to permit division of funds between the competing claimants.

The Weinsteins and State Farm arbitrated the value of the Weinsteins' claim in August and September 1997.[2] Arbitrator Kolts awarded the Weinsteins $1,528,040 on September 11, 1997. State Farm paid the full amount in October 1997. The Schwartzes' counsel states that the first notice his office

---

[1]The pertinent policy provisions are these:

"We will pay, up to the [two million dollar] limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an uninsured motor vehicle. [¶] . . . [¶]

"This coverage will apply only when damages are paid by or on behalf of the liable party or there is payment by your underlying coverage. [¶] . . . [¶]

"The limits of liability are not increased because: . . . more than one person is insured at the time of the accident."

[2]The uninsured motorist coverage statute requires the policy to provide that the determination as to whether the insured is legally entitled to recover damages, and if so the amount, is to be made by agreement between the insurer and the insured, or in the event of disagreement, by arbitration. (Ins. Code, § 11580.2, subd. (f).) The State Farm policy says that its coverage

received "about State Farm conducting the arbitration and award to the Weinsteins was after State Farm paid it."

On December 30, 1997, USAA paid the Schwartzes the policy limits on their primary policy. On January 21, 1998, the Schwartzes provided State Farm with documentation that USAA had exhausted its policy limits in making partial payment to the Schwartzes. Three weeks later, State Farm paid the Schwartzes the amount remaining under the excess policy, $471,960.

The Schwartzes sued, alleging that before arbitrating the Weinsteins' claim and paying the arbitration award, State Farm knew to a reasonable degree of certainty that the combined claims of the Schwartzes and Weinsteins would exceed the available limits under both primary and excess policies. State Farm nevertheless took no steps to reserve a proportionate share of the excess policy benefits in anticipation of the Schwartzes' claim or to advise them before disbursing benefits to the Weinsteins. The Schwartzes asserted this conduct constituted a breach of the insurance contract, breach of the implied covenant of good faith and fair dealing, fraud and intentional infliction of emotional distress, and sought a declaration of the parties' rights and obligations under the policy, general and special damages, attorney fees and punitive damages.

State Farm moved for summary judgment. State Farm argued that its duty to pay the Weinsteins arose before its duty to pay the Schwartzes; that it had no duty to interplead and no valid basis for interpleading funds available under the policy; and that it did not withhold any benefits due, which is a necessary element of a claim for breach of the implied covenant of good faith and fair dealing.

The trial court granted summary adjudication to State Farm on all causes of action, concluding that State Farm properly paid out policy limits as claims became payable and had no other contractual obligations to its insured. It ruled that State Farm's knowledge that the Schwartzes' claim might exceed policy limits was irrelevant because State Farm had no obligation to the Schwartzes until their primary insurance was exhausted. The court also observed that the Schwartzes were aware that the State Farm policy could be depleted by the Weinsteins' claim, yet failed to file suit against State Farm for apportionment of the policy limits or other declaratory relief.

This appeal was timely filed after entry of judgment.

---

"will apply in accordance with the terms and conditions of your underlying Uninsured Motorist Coverage."

## DISCUSSION

The question whether an excess insurer has any duty to its insured *before* its obligation to cover the insured's claim actually matures implicates several well-established legal principles. ▮ The first is the fundamental principle of the covenant of good faith and fair dealing implied in every insurance contract: that neither party will do anything to injure the other's right to receive benefits under the agreement. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032].) The second is the principle, stated in numerous cases, that breach of that covenant cannot occur if no benefits are due under the policy. (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246].) The third is that no benefits are due under an excess policy unless and until the underlying primary coverage is exhausted. (See *Phoenix Ins. Co. v. United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1528 [235 Cal.Rptr. 185] [generally an excess liability insurer has no duty to participate in insured's defense or contribute to a settlement on its behalf until primary coverages are exhausted].)

From these principles and the cases establishing them, we conclude in summary that:

1. An excess insurer's implied covenant not to injure an insured's right to receive the benefits of the insurance contract exists from the inception of the agreement with the insured, and an excess insurer has the same obligation as a primary insurer to refrain from favoring the interests of one insured over the other, so long as a potential for coverage under the insurance contract exists.

2. The legal principle that a breach of the implied covenant cannot occur "unless policy benefits are due" refers to whether the policy will eventually cover the claim, and does not depend on when such coverage finally attaches.

3. Therefore, payment of full benefits to one insured, with knowledge of the other insured's competing claim to the same limited pool of insurance funds, may breach the insurer's implied covenant not to impair its other insured's right to receive benefits under the contract, and summary judgment for State Farm was inappropriate.

A. *Because an excess insurer's implied covenant not to frustrate its insured's right to receive the benefits of the insurance contract exists from the inception of the agreement, the trial court erred in concluding State Farm had no duty to the Schwartzes until their primary insurance was exhausted.*

The Schwartzes brought claims for breach of the insurance contract and breach of the implied covenant of good faith and fair dealing that inheres in every contract. The same conduct by State Farm was alleged in support of both claims: that State Farm paid full benefits to the Weinsteins without regard for the interests of its other insured, the Schwartzes, in the same pool of benefits. As a result, the Schwartzes did not receive the benefits to which they were entitled under the policy.[3]

 The trial court concluded that State Farm complied with all of its contractual obligations as they arose and had no duty to the Schwartzes until they exhausted their primary insurance, including no obligation to ensure an equitable distribution of funds to its insureds. We disagree with this conclusion, because an excess insurer's duty not to impair its insured's right to benefits under the contract exists throughout the contractual relationship.

 It has long been settled that an implied covenant of good faith and fair dealing exists in every insurance contract that neither party will do anything to injure the right of the other to receive benefits under the agreement. (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883].) That covenant "is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619].) The "precise nature and extent of the duty imposed by [the] implied promise will depend on the contractual purposes." (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141].) And, to fulfill its obligation not to impair the insured's right to receive the benefits of the agreement, the insurer "must give at least as much consideration to the [insured's] interests as it does to its own." (*Id.* at pp. 818-819.)

 We conclude that the duty applies to an excess insurer, just as it does to a primary insurer. We reject the notion that, simply because a

---

[3]We consider these claims together, as the trial court's rationale for summarily adjudicating them in favor of State Farm was the same in each case. Moreover, as discussed in the text below, the covenant of good faith and fair dealing is an implied-in-law term of every contract, and "its breach will always result in a breach of the contract . . . ." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1393 [272 Cal.Rptr. 387].)

condition precedent to a particular obligation—the obligation to pay—has not yet occurred, the insurer is relieved from the implied covenants that inhere in *every* contract. State Farm and the Schwartzes had an insurance contract for which the Schwartzes paid premiums, and State Farm necessarily had contractual obligations to them, albeit contingent on future events, from the moment the parties entered into the contract.[4] The implied duty not to impair the insured's right to benefits "arises from [the] contractual relationship existing between the parties," and indeed is "unconditional and independent of the performance of [the insured's] contractual obligations." (*Gruenberg v. Aetna Ins. Co., supra,* 9 Cal.3d 566, 577-578.) The Schwartzes had a reasonable expectation that if their injuries exceeded the limits of their primary policy, coverage would be provided under their excess policy. State Farm plainly had an implied-in-law contractual obligation to the Schwartzes —as well as to the Weinsteins—not to injure their right to receive benefits under the agreement.[5]

B. *An insurer who favors the interests of one insured over those of the other violates the implied covenant of good faith and fair dealing.*

The duty imposed by the covenant of good faith and fair dealing includes the duty not to favor the interest of one of its insureds over the interests of the other. That duty has been clearly stated in the context of third party liability insurance.[6] For example, in *Shell Oil Co. v. National Union Fire Ins. Co.* (1996) 44 Cal.App.4th 1633, 1646-1647 [52 Cal.Rptr.2d 580], the court held that a liability insurer's payment of the entire $1 million policy limits on behalf of one coinsured did not discharge its obligation to the other insured, but rather constituted an actionable breach of those duties. Similarly, in *Strauss v. Farmers Ins. Exchange* (1994) 26 Cal.App.4th 1017 [31

---

[4]Indeed, State Farm's payment to the Weinsteins was one of those obligations, as it was State Farm and the Schwartzes who contracted for State Farm to pay amounts "which you and your passengers are legally entitled to recover" from an uninsured motorist.

[5]The Weinsteins as passengers were third party beneficiaries under the express terms of the Schwartzes' policy and could enforce the contract, including its implied covenant of good faith and fair dealing, against the insurer. (*Northwestern Mut. Ins. Co. v. Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1041-1044 [143 Cal.Rptr. 415] [permissive user was an insured under terms of automobile liability policy; at the very least, he was an express third party beneficiary].)

[6]"First party" insurance policies provide coverage for loss or damage sustained by the insured, while "third party" insurance provides coverage for liability of the insured to another. First party lawsuits, as in this case, involve an insured's claims against the insurer under coverages written for the insured's direct benefit; a claim for breach of the implied covenant of good faith and fair dealing generally involves the insurer's refusal, without proper cause, to compensate the insured for a loss covered by the policy, or unreasonable delay in payments due under the policy. Third party lawsuits generally involve claims that the liability insurer mishandled a third party claim against the insured, such as by unreasonably refusing to settle within policy limits or to provide a defense. (*Waters v. United Services Auto. Assn.* (1996) 41 Cal.App.4th 1063, 1069-1070 [48 Cal.Rptr.2d 910].)

Cal.Rptr.2d 811], the court held that the insurer had no duty to accept a settlement offer exhausting the policy in exchange for the release of only one of its three insureds. The court said that the insurer's duty extended to all of its insureds, and that acceptance of a settlement offer leaving two of them bereft of coverage would have breached the insurer's implied covenant of good faith and fair dealing. (*Id.* at pp. 1021-1022; see also *Lehto v. Allstate Ins. Co.* (1994) 31 Cal.App.4th 60, 72 [36 Cal.Rptr.2d 814] [insurer owes duty of good faith and fair dealing to each of its insureds, and cannot favor the interests of one insured over the other].)

We see no reason why the obligation of an insurer not to favor the interests of one insured over the other should not apply to excess insurers. State Farm argues that *Shell Oil* and *Strauss* are inapposite, because the insurers in those cases had *concurrent* obligations to protect more than one insured against liability to a third party claimant, whereas, in contrast, State Farm had *no* current obligation to the Schwartzes when it paid the Weinsteins. For the reasons already stated, we disagree. State Farm clearly had no duty to pay the Schwartzes at the time it paid the Weinsteins, because the primary USAA policy was not exhausted. However, it does not follow that State Farm had no duty to treat the Schwartzes fairly. The Schwartzes had already made a demand under the policy. Indeed, they were required by the terms of the excess policy to notify State Farm promptly "if something happens that might involve this policy."[7]

In short, State Farm was placed on notice of the Schwartzes' potential interest in the benefits of their excess policy. The insurer's duty not to favor the interests of one insured over the other necessarily applies to require an excess insurer to consider the interests of *all* of its insureds—including its named insured—in the limited policy proceeds, whether or not that interest has matured to the point of requiring payment. To conclude otherwise would require insureds to engage in a race to exhaust the available primary insurance, with no right to information from the excess insurer about the amount or status of the competing claim, and with no control over actions of the primary insurer. That would be entirely contrary to the insurer's obligation to "give at least as much consideration to the [insured's] interests as it does to its own." (*Egan v. Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 818-819.)

---

[7]State Farm's excess policy with the Schwartzes advised them that if they failed in this notification, "[w]e may not provide coverage." It would be ironic to conclude that, while the Schwartzes have duties under the policy to State Farm before their primary policy is exhausted, State Farm has no duty to consider the Schwartzes' interests until the duty to pay benefits actually attaches.

C. *There is no merit to State Farm's argument that no breach of the implied covenant can occur if there is no breach of an express contractual provision.*

State Farm argues that since it had no express contractual duty to the Schwartzes when it paid the Weinsteins, it necessarily could have no duty under the implied covenant of good faith and fair dealing, since no breach of the covenant can occur in the absence of a breach of the contract. That argument is specious. ■ It is well established that a breach of the implied covenant of good faith is a breach of the contract (*Careau & Co. v. Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at p. 1393), and that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 373 & fn.12 [6 Cal.Rptr.2d 467, 826 P.2d 710] [commercial lease case dealing with covenant of good faith in traditional contract sense and not as a tort]; see *Comunale v. Traders & General Ins. Co., supra,* 50 Cal.2d 654, 659 [implied obligation of good faith and fair dealing "requires the insurer to settle in an appropriate case although the express terms of the policy do not impose such a duty"].) Similarly, even an insurer that pays the full limits of its policy may be liable for breach of the implied covenant, if improper claims handling causes detriment to the insured. (*Fleming v. Safeco Ins. Co.* (1984) 160 Cal.App.3d 31, 37-38 [206 Cal.Rptr. 313].)[8]

D. *The principle that no breach of the covenant of good faith and fair dealing can occur if no benefits are due under the policy applies only when no potential for coverage exists under the policy.*

■ As State Farm points out, cases say there can be no breach of the covenant of good faith and fair dealing if no benefits are due under the policy. Those cases, however, show that the principle has been applied *only* when there is no coverage, *and no potential coverage,* under the policy.

---

[8]State Farm cites several cases for the proposition that where breach of contract cannot be shown, breach of the implied covenant of good faith and fair dealing cannot be shown. As discussed below, those cases are premised on the fact there was *no coverage* under the insurance policy, not as here, that coverage had not yet attached. (*San Diego Housing Com. v. Industrial Indemnity Co.* (1998) 68 Cal.App.4th 526, 544 [80 Cal.Rptr.2d 393] [plaintiff had no right to coverage under a liability policy for repair costs, and consequently could not claim damages for the insurer's failure to respond promptly to its claims]; *Hoffman v. State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 191 [19 Cal.Rptr.2d 809] [plaintiffs suffered no covered loss while they owned property and had no insurable interest thereafter, so insurer did not breach contract, or obligation to deal in good faith, by refusing to pay for claimed diminution in value].)

In *Bernstein v. Consolidated American Ins. Co.* (1995) 37 Cal.App.4th 763, 773 [43 Cal.Rptr.2d 817],[9] summary adjudication was upheld because "a prerequisite to an actionable breach of the implied covenant of good faith and fair dealing is the denial of benefits due under the policy [citing cases] . . . ." But that holding was premised on the conclusion that "there was no potential for coverage under the Bernsteins' insurance policy." Consequently, the insurer owed no duty to defend its insured and did not breach the insurance contract by refusing to do so. (37 Cal.App.4th at p. 773.) A similar conclusion may be drawn from the cases cited by *Bernstein*. In *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d 1136, 1151, the court held that to establish a breach of the implied covenant, "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." But in *Love,* no benefits were due because the Loves' claim to benefits was time-barred. (*Id.* at pp. 1151-1152.)[10]

There was no doubt that the Schwartzes' claim would be covered by the State Farm policy once the primary insurer exhausted its policy limits. As an excess insurer, State Farm, like any other insurer, was obliged under the implied covenant of good faith and fair dealing to do nothing to impair the Schwartzes' right to the benefits of the agreement. Payment in full to its other insured, the Weinsteins, might well impair those rights if that payment prevented the Schwartzes from receiving a fair share of benefits under the policy. That issue is for jury determination at trial.

E. *There is no merit to State Farm's argument that a duty to protect the interests of an insured who has not yet exhausted the limits of his or her primary policy exposes the insurer to tort liability to the other insured that has exhausted those limits.*

State Farm argues that it had an obligation to promptly pay the $1.5 million award to the Weinsteins, and that if it withheld or delayed payment,

---

[9]*Bernstein* was disapproved on another point in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, footnote 13 [88 Cal.Rptr.2d 366, 982 P.2d 229].

[10]In *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1986) 184 Cal.App.3d 1428, 1433 [229 Cal.Rptr. 409], the other case cited in *Bernstein,* the court merely observed that no award can be made on a claim for breach of good faith and fair dealing without first establishing that coverage (which the insurer denied) exists, and the trial court could order the coverage issue tried first. State Farm also cites *Waller v. Truck Ins. Exchange, Inc.,* for the proposition that the implied covenant does not exist " 'independent of its contractual underpinnings.' " (11 Cal.4th 1, 36, quoting *Love v. Fire Ins. Exchange, supra,* 221 Cal.App.3d 1136, 1153.) While that may be so, *Waller,* like *Bernstein,* merely held that if there was no potential for coverage, and thus no duty to defend in a third party liability case, there could be no action for breach of the implied covenant of good faith and fair dealing. (11 Cal.4th at p. 37.)

it would have been exposed to their claims for breach of contract and bad faith. As a result, this court should not impose a duty as to one insured that would expose the insurer to tort liability as to another insured.

That argument too is specious. ██ An insurer facing multiple claims on a limited pool of funds has at least two means of protecting itself without breaching its duty to either insured. The first is to seek a negotiated agreement among the insureds as to a fair apportionment of the pool of funds. If that approach fails, an insurer may file an interpleader action as other insurers do when faced with multiple claimants to a single fund. (E.g., *Minnesota Mut. Life Ins. Co. v. Ensley* (9th Cir. 1999) 174 F.3d 977, 981 [insurer facing potential liability to two claimants for life insurance proceeds filed federal interpleader suit and was properly discharged from dispute upon depositing proceeds with the court].)

Applying California law, *Minnesota Mut.* rejected a claimant's contention that the insurer breached the contract and the implied covenant by failing to pay him the policy benefits. The court held that the failure to pay the claim was not unreasonable in light of the insurer's good faith belief that it faced the possibility of multiple claims, and that the insurer satisfied its obligation under the contract by instituting the interpleader action. (*Minnesota Mut. Life Ins. Co. v. Ensley, supra,* 174 F.3d at p. 981; see also *Lehto v. Allstate Ins. Co., supra,* 31 Cal.App.4th 60, 69 [insurer not liable for bad faith for interpleading policy limits when faced with valid, competing claims exceeding those limits]; *Maddux v. Philadelphia Life Ins. Co.* (S.D.Cal. 1999) 77 F.Supp.2d 1123, 1129 [insurer does not breach contract when it retains good faith belief that it faces possibility of competing claims and interpleads the disputed life insurance funds].)

State Farm asserts it had no duty to file an interpleader, and that of course is so. We merely conclude that State Farm did have a duty not to favor the interests of one insured over those of the other, and could have protected itself from liability for bad faith claims by either insured by choosing that course.

State Farm also cites the trial court's conclusion that public policy favors the expeditious processing of claims, and that requiring the excess insurer to delay paying all parties any benefits "until all possible claims are adjudicated would encourage delay, could lead to bad faith lawsuits and perhaps reward a dilatory last claimant who could demand extra tribute and hold everyone else up." We cannot agree. We are alerted to no reason why an insured would wish to delay the ultimate payment of his claim. Moreover, the "first-come, first-served" theory of recovery on excess insurance coverage suggests that (a) the insureds have control over payment by the primary

insurer, and (b) there is some merit to awarding insurance benefits to injured parties based on how fast they can press their claims rather than on the extent of loss or other equitable basis. Both propositions are dubious.[11]

F. *Summary adjudication of the Schwartzes' other claims was likewise flawed.*

 We have held that the trial court erred in concluding that an excess insurer has no duty to ensure the equitable distribution of policy benefits among its insureds. Since State Farm offered no evidence of its compliance with that duty, summary adjudication was inappropriate on the Schwartzes' causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

Summary adjudication was likewise improper on the causes of action for fraud and intentional infliction of emotional distress. State Farm presented identical evidence in support of its motion for summary adjudication of these claims as it did on the other claims, namely that it paid out its policy limits under the insurance contract and owed no duty to the Schwartzes when it paid the Weinsteins. But State Farm had a duty to the Schwartzes, and offered no evidence to show that any elements of the causes of action for fraud and emotional distress could not be established. State Farm therefore did not meet its burden of proof on summary judgment of showing that those causes of action had no merit, and the burden of showing triable issues of material fact never shifted to the Schwartzes. (Code Civ. Proc., § 437c, subd. (o)(2).)

 Nor did State Farm meet its burden of proof on the Schwartzes' claim for punitive damages. State Farm's motion for summary adjudication merely *argues* that the Schwartzes will not be able to provide clear and convincing evidence of malice, fraud or oppression as required under section 3294, subdivision (a) of the Civil Code. While the Schwartzes may not be able to do so, State Farm's declarations do not establish that the Schwartzes will not be able to do so. State Farm offered the same evidence as on other claims, namely that it paid the Weinsteins and had no duty to the Schwartzes. The Schwartzes argued, correctly, that State Farm had not

---

[11]The trial court also pointed out that the Schwartzes knew there was a limited fund, but did not sue State Farm for apportionment of the policy or other declaratory relief. But there was no evidence the Schwartzes knew that the Weinsteins' claim had been arbitrated to an award, the amount of the award, or that State Farm would pay it without notice or consideration of the Schwartzes' competing claim. It is the duty of the insurer to treat its insureds fairly, not the duty of the insured to file a preemptive (and presumably, in most cases, unnecessary) suit to make sure the insurer does so.

that established it was entitled to summary adjudication on any causes ·of action or remedies for breach. Moreover, they offered evidence that State Farm did not advise them that they risked losing benefits if the Weinsteins arbitrated their claims first, did not notify them of the Weinstein arbitration, knew to a reasonable degree of certainty that the Schwartz and Weinstein claims together would exceed State Farm's policy limits, and gave them no notice of the arbitration award until after the award was paid. At the hearing, the Schwartzes' counsel also observed that he had not yet been able to examine State Farm's claims adjuster to establish State Farm's motivation in proceeding as it did.

State Farm insists that the trial court specifically found that State Farm "has established that no triable issues of material facts exist as to the claim of oppression, fraud or malice which could entitle plaintiffs to punitive damages." The court was clearly relying on its erroneous rulings on the other causes of action.[12] Since State Farm's undisputed facts did not negate any of the Schwartzes' claims, the burden to show triable issues of fact on the punitive damages claim, as on the other claims, never shifted to the Schwartzes. (Code Civ. Proc., § 437c, subd. (o)(2).)

### DISPOSITION

The judgment is reversed and the case remanded to the trial court for further proceedings. The appellants are to recover their costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied June 5, 2001, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied August 15, 2001. George, C. J., and Werdegar, J., did not participate therein.

---

[12]The transcript reads as follows:

"The court also finds that the defendants have established that there is no triable issue of material fact as to any claim of oppression, fraud, or malice that would give rise to a claim of punitive damage. Plaintiff has not come forward with any material facts to contradict defendant's facts or to give rise to any factual dispute with regard to a claim of oppression, fraud, or malice.

"Based upon the court's ruling up to this point, which the court incorporates herein by reference, therefore, the court finds that there is no material triable issue of fact as to any claim for punitive damage."