[No. B171654. Second Dist., Div. Eight. Feb. 10, 2005.]

STEVEN KOTLER, Plaintiff and Appellant, v.
PACIFICARE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Shernoff Bidart Darras, Michael J. Bidart and Jeffrey Isaac Ehrlich for Plaintiff and Appellant.

K & R Law Group, Gary S. Pancer, Joshua Mandell; Greines, Martin, Stein & Richland, Timothy T. Coates and Peter O. Israel for Defendants and Respondents.

OPINION

**COOPER, P. J.**—Plaintiff, Steven Kotler, appeals from summary judgment granted to his health care service plan, PacifiCare of California (PacifiCare), and its parent corporation PacifiCare Health Systems, Inc. (PacifiCare Systems; collectively defendants), on claims for breach of contract and breach of the implied covenant of good faith and fair dealing. The action arose out of delays plaintiff encountered in obtaining treatment for a debilitating illness, Lyme disease. We conclude that the judgment must be reversed.

## FACTS

The evidence adduced by both sides on the motion for summary judgment disclosed the following scenario. Plaintiff is a freelance writer, who since 1997 was a member of PacifiCare, a health maintenance organization, which provides its members health care services through contracting doctors and hospitals. Under PacifiCare's Subscriber Agreement (agreement), a member must choose a primary care physician, who directs and coordinates the member's medical care, including referrals to specialists who are also participants in PacifiCare's plan. In September 2000, plaintiff moved from Northern to Southern California, and was required to select a new primary care physician. He chose Dr. Howard Wynne, of the Cedars-Sinai Medical Group (Cedars-Sinai).

From his arrival in Los Angeles, plaintiff experienced periodic flu-like symptoms. At an urgent care facility, he was diagnosed with a sinus infection and given a prescription for antibiotics. A few weeks later, his symptoms returned. They became more severe, and in December 2000 plaintiff phoned Dr. Wynne's office for an appointment, which was arranged only for January 11, 2001.

After plaintiff described his symptoms, Dr. Wynne had him take an HIV test. Plaintiff asked about being tested for Lyme disease, but Dr. Wynne told

him he had none of its symptoms.[1] After the HIV test proved negative, plaintiff sought further testing. He was told it would require a second appointment, which could not be scheduled until January 29, 2001.

In the interim, plaintiff, who had been in Africa in 2000, discussed his condition with a tropical disease specialist, whom he had met while writing an article. That physician gave plaintiff a list of diseases that might be causing his condition, not including Lyme disease. Plaintiff presented this information to Dr. Wynne on January 29, and Dr. Wynne ordered tests for several of the diseases. All proved negative.

With plaintiff complaining particularly of pains in his joints, Dr. Wynne referred him to an orthopedic surgeon. The surgeon suggested performing surgery, but when plaintiff inquired whether it was strange that four different joints were simultaneously affected, the surgeon replied that the question was one for plaintiff's general practitioner, or for an infectious disease specialist.

At or shortly after his third appointment with Dr. Wynne, on January 31, 2001, appellant asked for a referral to an infectious disease specialist. On February 26, Dr. Wynne gave plaintiff such a referral, to Dr. Irving Polaski. His office told plaintiff he could not have an appointment until six weeks later, in part because Dr. Polaski saw patients for PacifiCare only one day a week. Plaintiff phoned Dr. Wynne's office and asked for help obtaining an earlier appointment, but when he called again a few days later (having heard nothing), he was told that they were unable to advance his appointment.

Frustrated and ill, plaintiff obtained the name of another infectious disease specialist, Dr. Ronald Fishbach, who was not associated with PacifiCare. Plaintiff called Dr. Fishbach's office and obtained an appointment for March 14, shortly after his call. From plaintiff's symptoms, Dr. Fishbach ordered tests to rule out several conditions, including Lyme disease. On March 19, he received the results, which indicated that plaintiff had that illness. On the same day, Dr. Fishbach informed plaintiff and prescribed doxycycline.

Plaintiff pursued this treatment for several months, and underwent improvement in his condition and strength, except when he discontinued the medication a few times. After seeing plaintiff about once a month, Dr. Fishbach in August 2001 decided to take plaintiff off the medication. He did so in September 2001, and then saw plaintiff again in July 2002.

---

[1] According to plaintiff's deposition, he subsequently requested again that Dr. Wynne test him for Lyme disease, but received the same answer.

Plaintiff sought reimbursement of Dr. Fishbach's charges. Cedars-Sinai denied reimbursement, as the doctor was not part of PacifiCare's network. Plaintiff then unsuccessfully pursued two appeals within PacifiCare. PacifiCare rejected plaintiff's contention that Dr. Fishbach's treatment should be regarded as emergency care, which is subject to reimbursement under the agreement, even if provided by out-of-network providers.[2]

In October 2001, plaintiff commenced this action, against PacifiCare, PacifiCare Systems, and also Dr. Wynne and Cedars-Sinai, who are not parties to this appeal. The operative first amended complaint (FAC) was filed in March 2002. After reciting at length the events summarized above, the FAC alleged two causes of action against PacifiCare, for breach of contract and breach of the covenant of good faith and fair dealing. PacifiCare Systems was named based on alter ego allegations that PacifiCare was its mere instrumentality.

The breach of contract cause of action alleged that PacifiCare had breached the agreement by unreasonably delaying authorization for necessary referral of plaintiff to a specialist, and by ultimately referring him to an infectious disease specialist who saw HMO patients only once a week, thus ignoring plaintiff's welfare and interests. Other alleged breaches concerned PacifiCare's payment and appeals methods, and other matters. The bad faith cause of action alleged breaches of the duty of good faith involving nonpayment of benefits; failure to investigate, process, and settle plaintiff's claims for benefits; and failure to provide appropriate care and treatment.

Defendants moved for summary judgment or, alternatively, summary adjudication of issues, on grounds that undisputed evidence showed there had been neither a breach of the agreement nor any unreasonable conduct in pursuing it. In addition, defendants contended there was no factual basis for either imposition of alter ego liability on PacifiCare Systems or assessment of punitive damages. Defendants supported their motion by declarations of officers and employees of PacifiCare and PacifiCare Systems, as well as Dr. Wynne and a Lyme disease expert, and portions of plaintiff's and Dr. Fishbach's depositions. The principal basis of defendants' position was that plaintiff's treatment by Dr. Fishbach had not constituted reimbursable emergency care under the agreement. In opposition, plaintiff submitted further excerpts from the depositions, and documentation regarding the corporate business of PacifiCare Systems.

---

[2] Plaintiff also contended that Dr. Fishbach's care was eligible for reimbursement under the agreement as "Urgently Needed Service." That allowance for out-of-network services applies in terms only to care obtained outside the plan's geographical service area. Plaintiff no longer contends his treatment was so covered, and we do not address the issue further.

The trial court granted the motion for summary judgment. With respect to the breach of contract cause, the court found no triable issue of fact that plaintiff had treated with Dr. Fishbach on account of a reimbursable emergency medical condition, as defined in the agreement. There having been no breach of the agreement with respect to benefits due, the bad faith cause also lacked merit.

## DISCUSSION

The trial court was correct in perceiving no triable issue that plaintiff's treatment with Dr. Fishbach was reimbursable under the agreement, as treatment of an "emergency medical condition." The agreement defines such a condition as "A medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected by the Member to result in any of the following: [¶] Placing the Member's health in serious jeopardy; [¶] Serious impairment to bodily functions; [¶] Serious dysfunction of any bodily organ or part; or [¶] Active labor . . . ."[3]

It cannot be contended that plaintiff's visits with Dr. Fishbach, after he had diagnosed the illness and prescribed the ameliorative doxycycline, involved an emergency condition. Nor was there a triable issue that when plaintiff first consulted the specialist his medical condition fit that definition. Plaintiff agreed that his already ongoing symptoms did not arise by sudden onset of particular severity. (See *ante*, fn. 3.) Dr. Fishbach testified that when he first saw plaintiff, he did not require immediate care to avoid harm. Plaintiff's own testimony, offered to show a triable issue, was that as he pressed Dr. Wynne for a referral, and then to speed up the appointment with Dr. Polaski, he felt "really, really sick," and his symptoms were worsening. But those symptoms were never such as to cause him to call 911, or go to the nearest medical facility, as the agreement instructs for emergency conditions.[4] Given the entire situation, and his own response to it, plaintiff could not reasonably have expected to suffer, without *"immediate"* medical attention, the consequences outlined in the definition of emergency medical condition.

---

[3] When repeated in the less formal "Medical and Hospital Benefits" section of the plan booklet, the definition of emergency medical condition substitutes "the sudden onset of symptoms" for "acute symptoms." This rephrasing would appear to refute plaintiff's contention that, in the agreement, "acute" should be understood to mean "characterized by . . . severity," rather than "having a sudden onset . . . ." (Merriam-Webster's Collegiate Dict. (10th ed. 1998) p. 12.) Moreover, both versions of the emergency condition definition address the severity of symptoms separately.

[4] The "Medical and Hospital Benefits" description recites that "Examples of medical conditions requiring Emergency Services include, but are not limited to, heart attacks, strokes, poisonings, active labor, or sudden inability to breathe."

This does not, however, end the analysis with respect to plaintiff's breach of contract claim. Plaintiff's pleading embraced not just a challenge to PacifiCare's nonpayment of benefits according to the agreement, but also a claim of breach of the agreement by unreasonably delaying referring plaintiff to a specialist, and then only to one with limited hours available for plan subscribers. Fairly construed, these allegations charged that PacifiCare had breached a contractual obligation to provide for medical services and treatment on a timely basis.

The obligations of a contract—here, to provide plaintiff with medically necessary services of specialists, as authorized by the primary care physician—must be performed either at a time the contract specifies or within a reasonable time. (Civ. Code, § 1657.) What constitutes such a reasonable time ordinarily presents a question of fact, dependent upon the circumstances of the case. (*Consolidated World Investments, Inc. v. Lido Preferred, Ltd.* (1992) 9 Cal.App.4th 373, 381 [11 Cal.Rptr.2d 524].) Under the facts presented to the trial court, a triable issue existed as to whether or not PacifiCare had fulfilled its implied-in-law obligation to provide plaintiff timely treatment by an infectious disease specialist. Given the history of plaintiff's illness, his condition, and the palliative failure of the care already provided under PacifiCare's aegis, a six-week wait for an appointment following Dr. Wynne's referral could well be found unreasonable.[5]

Defendants oppose this conclusion on the ground that plaintiff did not offer any evidence, presumably expert, that the delay he experienced violated any "standard," whether "community," "medical," or other. This argument fails for two independently sufficient reasons. First, the standard of reasonableness applicable in this case is a conventional one, derived from "the situation of the parties, the nature of the transaction, and the facts of the particular case" (*Sawday v. Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816]), and its establishment does not require further proof. And as for breach of the standard, as just stated, a reasonable trier of fact would be entitled to determine, from all of the evidence, that PacifiCare did not provide plaintiff specialist care within a reasonable time.

---

[5] As plaintiff notes, statutes and regulations governing health care service providers such as PacifiCare specifically contemplate timely provision of services to enrollees. (E.g., Health & Saf. Code, § 1367, subd. (e)(1) ["All services shall be readily available at reasonable times to each enrollee consistent with good professional practice"]; *id.*, § 1367.03, subd. (a)(1) [mandating promulgation of regulations "to ensure that enrollees have access to needed health care services in a timely manner," in consideration of, inter alia, "[w]aiting times for appointments with physicians, including primary care and specialty physicians"]; Cal. Code Regs., tit. 28, §§ 1300.67.1, subd. (d), 1300.67.2, subds. (d), (f).)

Second, and even more fundamental, on motion for summary judgment it was defendants' burden, not plaintiff's, to negate the claim of unreasonableness. (Code Civ. Proc., § 437c, subds. (a), (o)(1), (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Defendants' showing, that plaintiff received the very referral appointment he challenges as untimely, did not do so. For the same reason, defendants' argument (again with regard to bad faith) that plaintiff failed to adduce evidence of damages—an issue addressed neither by the summary judgment motion nor in the court's ruling (see Code Civ. Proc., § 437c, subd. (m)(2))—is not in point.

Defendants also note that before consulting Dr. Fishbach, plaintiff apparently did not contact PacifiCare directly for assistance in obtaining a more timely appointment, or invoke the agreement's provisions for "Quality Management Review." Defendants do not directly argue that these facts justify the summary judgment, and we do not perceive that they do. Plaintiff did seek assistance from his primary care physician, whom the agreement provides was to make and coordinate specialist referrals.

For the foregoing reasons, summary adjudication of plaintiff's cause of action for breach of contract should not have been granted. This conclusion also undermines the summary adjudication of the companion bad faith cause. The trial court rejected that cause of action on the ground there was no triable issue of a breach of the agreement, such a breach being "the underpinning of a bad faith claim under California law." Without regard to its intrinsic validity, this stated basis for the trial court's ruling on the present claim no longer exists.

To the extent not already discussed, defendants' argument in support of the summary adjudication of the bad faith claim essentially restates the trial court's holding that there was no breach of the agreement. Defendants also argue that, as a matter of law, PacifiCare did not act unreasonably. But especially because PacifiCare's performance within a reasonable time presents a triable issue, it cannot be said that PacifiCare necessarily acted reasonably in providing plaintiff the benefits of the agreement. Accordingly, the judgment must be reversed entirely.[6]

---

[6] In their motion, defendants argued that there was no basis for liability on the part of defendant PacifiCare Systems based on an alter ego theory. The trial court did not rely upon this ground in its ruling, and defendants have not reasserted it defensively here. We therefore do not expand the issues by addressing it.

## DISPOSITION

The judgment is reversed. Plaintiff shall recover costs.

Rubin, J., and Boland, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 27, 2005.