[No. B195725. Second Dist., Div. Eight. Nov. 18, 2008.]

MARIA TERESA WATANABE, Plaintiff and Appellant, v.
CALIFORNIA PHYSICIANS' SERVICE, Defendant and Respondent.

58

## COUNSEL

Arkin & Glovsky, Sharon J. Arkin and Scott C. Glovsky for Plaintiff and Appellant.

Law Offices of Daniel J. Koes and Daniel J. Koes for United Policyholders as Amicus Curiae on behalf of Plaintiff and Appellant.

Steven Ingram for Consumer Attorneys of California and Consumer Attorneys Association of Los Angeles as Amici Curiae on behalf of Plaintiff and Appellant.

Manatt, Phelps & Phillips, Gregory N. Pimstone and Joanna S. McCallum for Defendant and Respondent.

Sedgwick, Detert, Moran & Arnold, Christina J. Imre, David M. Humiston and Gary S. Pancer for California Association of Health Plans as Amicus Curaie on behalf of Defendant and Respondent.

**OPINION**

**FLIER, J.**—Appellant Maria Teresa Watanabe filed an action against California Physicians' Service doing business as Blue Shield of California (Blue Shield). The jury returned a verdict that Blue Shield had breached its contract with appellant and awarded $65 in damages. The jury, however, found that Blue Shield had not breached its duty of good faith and fair dealing under its contract with appellant. A judgment conforming to the verdict was entered[1] and this appeal followed. Appellant contends that the trial court erred in giving certain instructions to the jury. We disagree and affirm the judgment.

## INTRODUCTION

Appellant's complaint set forth causes of action for breach of contract, for breach of the covenant of good faith and fair dealing, for unfair business practices under Business and Professions Code section 17200 and for a violation of Civil Code section 1750 et seq. The latter two causes of action were dismissed upon the stipulation of the parties and the case went to the jury only on the first two causes of action. From the first, the only defendant named in the action was Blue Shield.

The Good Samaritan Medical Practice Association (GSMPA), the entity that directly provided the medical care to appellant that is the basis of the action against Blue Shield, settled with appellant at some point prior to the entry of the judgment in this action for $150,000. This settlement offset the recovery of $65 in this action.

## THE RELEVANT REGULATORY FRAMEWORK

The comprehensive statute that governs Blue Shield is the Knox-Keene Health Care Service Plan Act of 1975 (hereafter Knox-Keene) (Health & Saf. Code, § 1340 et seq.).[2]

Under Knox-Keene, a "health care service plan" is "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." (§ 1345, subd. (f)(1).)[3] Blue Shield does not

---

[1] As we note below, a settlement prior to trial with another party reduced appellant's recovery to $0.

[2] Unless otherwise noted, all statutory references are to the Health and Safety Code.

[3] Health care service plans are often called HMO's (health maintenance organizations).

actually provide medical care. It contracts with "providers"[4] like GSMPA to deliver medical care to persons who are subscribers to Blue Shield's health care service plan.

Under its agreement with GSMPA, and consistent with Knox-Keene,[5] Blue Shield delegated to GSMPA the initial determination whether a particular service or treatment is medically necessary. This is referred to variously as utilization review or utilization management.

Under its agreement with GSMPA, Blue Shield retained final authority to determine whether a treatment or service should be provided. In other words, Blue Shield retained the final authority to review and, if appropriate, to reverse the provider's decision.

Blue Shield's review of the provider's decision is triggered by the appeal process. Every letter informing a person that a treatment, service or referral has been denied contains information about how to appeal the decision. An appeal may be taken in writing, by telephone or by e-mail. This case raises no issues about the appeal process.

## THE MEDICAL CARE PROVIDED TO APPELLANT

Appellant selected GSMPA as her provider and Dr. Irina Jasper of GSMPA as her primary care physician.

Appellant saw Dr. Jasper several times after the birth of her second child. Dr. Jasper diagnosed appellant with high blood pressure, tension headaches, sinusitis, fatigue and other issues arising from the stress of caring for a newborn. In February 2003, appellant complained to Dr. Jasper about dizziness and occasional blurred vision.

Eventually, in July 2003, while on a visit in Japan, appellant was found to have a brain cyst. In August 2004, after her return to the United States, a noncancerous cyst was removed from her brain.

Returning to appellant's course of treatment by GSMPA and Dr. Jasper, appellant's headaches responded to rest, massage and Motrin. Appellant's expert testified that brain tumors do not respond to rest or massage. In February 2003, Dr. Jasper referred appellant to an ear, nose and throat (ENT) specialist (GSMPA approved the referral) who concluded that appellant's

---

[4] " 'Provider' means any professional person, organization, health facility, or other person or institution licensed by the state to deliver or furnish health care services." (§ 1345, subd. (i).)

[5] See Discussion, part 2., *post.*

symptoms were connected with high blood pressure. This specialist recommended a change in blood pressure medication and suggested that a referral to a neurologist would be appropriate if appellant did not respond to the new medication. The specialist also detected issues with appellant's thyroid; additional appointments with this specialist followed, which included ultrasound imaging and treatment, all of which were approved by GSMPA.

There now followed a series of slip-ups having to do with an eye examination ordered by Dr. Jasper that led to the jury's award of $65 for breach of contract. Initially, Dr. Jasper ordered a referral to an ophthalmologist to check appellant's blurred vision. When queried by GSMPA whether Dr. Jasper wanted appellant checked for a need for glasses, Dr. Jasper replied that a routine vision exam by an optometrist would do. GSMPA denied the request for an optometrist (there was testimony it would have granted the request for an ophthalmologist) because this was not a covered benefit. GSMPA telephoned Blue Shield to ask whether it was correct that this was not a covered benefit and Blue Shield confirmed it was not. GSMPA informed appellant by letter of its decision, as well as of her right to appeal the decision. Instead of appealing, appellant went to see an optometrist who prescribed reading glasses. Appellant paid $65 for this visit.

Appellant saw Dr. Jasper on March 11, 2003; she complained of dizziness and headaches. Dr. Jasper had not adjusted the blood pressure medication, as had been suggested by the ENT specialist, but requested authorization for an MRI. Dr. Hollinger, the GSMPA director responsible for medical decisions, decided that an MRI was not appropriate and that Dr. Jasper should do as the ENT specialist had suggested, i.e., begin by adjusting the blood pressure medication. Appellant and Dr. Jasper were informed of this decision, as well as of appellant's right to appeal it. Appellant did not appeal and Dr. Jasper testified that she thought Dr. Hollinger's decision was reasonable.

In May 2003, appellant continued to complain to Dr. Jasper about headaches and dizziness. Once again, some wires got crossed. Mistakenly, while filling out the form, Dr. Jasper stated that appellant needed to see a neurosurgeon—a request that was refused because she would have had to see a neurologist before she could see a neurosurgeon. This mixup was straightened out and the request to see a neurologist was approved.

The neurologist performed a full neurological examination and concluded that the results were normal. Appellant's symptoms, according to the neurologist, were due to stress. The neurologist recommended a brain imaging study in order to put appellant's mind at ease.

In June 2003, appellant asked Dr. Jasper whether she could travel to Japan and Dr. Jasper, who thought that appellant had tension headaches, encouraged her to take the trip.

Around July 10, 2003, Dr. Jasper submitted to GSMPA a request for a CT brain scan, even though the neurologist thought that this was only for appellant's peace of mind. This request was approved on July 15, 2003, but appellant was not told of the approval before she left for Japan.

After appellant's trip to Japan and the surgery that found a noncancerous brain cyst, there was a referral to an ophthalmologist for a followup. This was initially denied but, after an appeal to Blue Shield, the denial was reversed and the request was granted.

The gist of the foregoing is that, with the exception of the $65 visit with the optometrist, Blue Shield never denied appellant any medical service or treatment. The jury rectified the denial of the visit with the optometrist by awarding $65, even though there is evidence that this was not a covered benefit. Appellant was denied an MRI by GSMPA but never appealed that decision, which was predicated on the circumstance that appellant's medication had not been adjusted and that this should have been done before an MRI. The decision denying a followup with an ophthalmologist after the surgery was reversed by Blue Shield and this visit was authorized. In sum, Blue Shield, if it is liable at all, could be liable only vicariously for GSMPA's acts or omissions.

## JURY INSTRUCTIONS

Appellant contends that the trial court gave a number of prejudicially erroneous instructions to the jury.

First. The trial court instructed the jury that Blue Shield and GSMPA are each liable for their own acts or omissions, and are not liable for the acts and omissions of each other. This instruction is based on the first sentence of section 1371.25.[6] Appellant contends that it was error to omit the balance of section 1371.25 from the instructions.

---

[6] "A plan, any entity contracting with a plan, and providers are each responsible for their own acts or omissions, and are not liable for the acts or omissions of, or the costs of defending, others. Any provision to the contrary in a contract with providers is void and unenforceable. Nothing in this section shall preclude a finding of liability on the part of a plan, any entity contracting with a plan, or a provider, based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability." (§ 1371.25.)

Second. The trial court instructed the jury that Blue Shield delegated to GSMPA the function of "conducting initial reviews as to the appropriateness of requests for medical services. That delegation is permitted under California law." Appellant contends that this was erroneous because the duty of utilization review decisions is not delegable. Appellant requested a number of instructions that stated that utilization review decisions are not delegable and instructions that stated that Blue Shield remained liable even if it delegated these decisions to GSMPA. These instructions were not given to the jury.

Third. Appellant contends that the court instructed the jury "that Blue Shield's only duty upon delegating utilization review decisions to GSMPA was to 'establish policies and procedures to ensure that decisions based on medical necessity are consistent with criteria or guidelines that are supported by clinical principles and processes.' " Appellant contends that this conflicts with the principle that Blue Shield "remains ultimately responsible for GSMPA's utilization review decisions."

## DISCUSSION

1. *Blue Shield and GSMPA Are Each Liable for Their Own Acts and Omissions*

At least one court has previously addressed the relationship between the first and third sentences of section 1371.25 (see fn. 6, *ante*). In *California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1134 [4 Cal.Rptr.3d 583], the court rejected a claim that the health care service plan was liable to pay for emergency medical services when it had delegated that obligation to a provider: "However, as a matter of common sense, section 1371.25 does not allow a common law cause of action that is contrary to a specific provision of the Knox-Keene Act." We agree that it is common sense that an action proscribed by the first sentence of section 1371.25 is not resuscitated by the third sentence of that provision.

It cannot be said that section 1371.25 is ambiguous. That a plan and provider are "each responsible for their own acts or omissions" is reinforced in the same first sentence by the phrase that these entities "are not liable for the acts or omissions of, or the costs of defending, others." (*Ibid.*) In the unlikely case that all this is not clear enough, the second sentence cinches it: "Any provision to the contrary in a contract with providers is void and unenforceable." (*Ibid.*) It is hard to imagine a clearer statement of legislative purpose and intent than this.

■ "Under the fault principle as we know it today there are many situations in which *A* is held liable to *C* for damages that *B*'s negligence has caused *C*, even though *A* has been free of negligence or other fault. In such a case *A* is made vicariously liable for *B*'s fault." (5 Harper et al., The Law of Torts (2008 supp.) § 26.1, p. 2.) It is evident that the first and second sentences of section 1371.25 preclude the imposition of vicarious liability.

■ We do not think that, having precluded the imposition of vicarious liability in the first and second sentences of section 1371.25, the Legislature intended to reimpose it by means of the third sentence. This would be an absurd result by any measure. (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698–1699 [8 Cal.Rptr.2d 614].) Thus, it is clear that under the third sentence an entity that has committed an act or omission for which it is liable remains liable for that act or omission, *even if it shares liability with another entity.* All three doctrines enumerated in the third sentence of section 1371.25—equitable indemnity, comparative negligence and contribution—are instances when one or more parties are liable for an act or omission. (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 582, 583 [146 Cal.Rptr. 182, 578 P.2d 899] [comparative negligence]; *id.* at pp. 591, 598 [equitable indemnity]; *id.* at p. 596 [contribution].)

■ While it may well be true that the preclusion of vicarious liability is in keeping with the purposes and philosophy of Knox-Keene, it is not necessary to delve into these topics. The text of section 1371.25 is unmistakably clear in precluding the imposition of vicarious liability. For the same reason, it is both unnecessary and inappropriate to consider legislative history that allegedly favors appellant's side of the controversy. "When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg v. Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) In fact, when, as here, statutory language is clear, judicial construction is "neither necessary nor proper." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179 [96 Cal.Rptr.2d 518, 999 P.2d 706].)

2. *The Statutes Do Not Support the Contention That Blue Shield Was Precluded from Delegating Utilization Review*

■ Section 1367 sets forth the requirements that a health care service plan must meet. Among those requirements are that the "health care service plan contract[7] shall provide to subscribers and enrollees" all of the basic

---

[7] A "plan contract" means a contract between a plan and its subscribers. (§ 1345, subd. (r).)

health care services set forth in subdivision (b) of section 1345.[8] (§ 1367, subd. (i).) Subdivision (j) of section 1367 contains the following provision: "The obligation of the plan to comply with this section shall not be waived when the plan delegates any services that it is required to perform to its medical groups, independent practice associations, or other contracting entities."

Appellant contends that while a health care service plan may delegate the utilization review decisionmaking process, "section 1367, subdivisions (i) and (j) unequivocally establish that, however the utilization review decision is made, the [health care service plan] still remains liable for injuries resulting from the failure to provide the contracted-for care."

The first obstacle to this argument is section 1371.25. The health care service plan is not liable for the acts or omissions of others and is only liable for its own acts or omissions. Thus, if there are injuries "resulting from the failure to provide the contracted-for care," to use appellant's phrase, and these injuries are not caused by the health care service plan, by virtue of section 1371.25 the plan is not liable.

The second reason that appellant's argument is untenable is that there is no support for it in subdivision (i) of section 1367. Subdivision (i) requires that the plan contract (see fn. 7, *ante*) shall provide all of the basic health care services (see fn. 8, *ante*). Once this is done, and there is no claim in this case to the contrary, the requirement of subdivision (j) of section 1367 has been met. There is nothing in subdivision (j) of section 1367 that states that a health care service plan "remains liable for injuries resulting from the failure to provide the contracted-for care." This is not a matter of statutory construction since there is nothing that could even be remotely construed to read appellant's theory into subdivision (j) of section 1367.

Third, Knox-Keene specifically provides for and regulates the delegation of utilization review and management. (E.g., § 1367.01, subd. (a).)[9] In

---

[8] Basic health care services are physician services, including consultation and referral; hospital inpatient services and ambulatory care services; diagnostic laboratory and diagnostic and therapeutic radiologic services; home health services; preventive health services; emergency health care services, including ambulance and ambulance transport services and out-of-area coverage; ambulance and ambulance transport services provided through the 911 emergency response system; and hospice care. (§ 1345, subd. (b).)

[9] "A health care service plan and any entity with which it contracts for services that include utilization review or utilization management functions, that prospectively, retrospectively, or concurrently reviews and approves, modifies, delays, or denies, based in whole or in part on medical necessity, requests by providers prior to, retrospectively, or concurrent with the provision of health care services to enrollees, or that delegates these functions to medical groups or independent practice associations or to other contracting providers, shall comply with this section." (§ 1367.01, subd. (a).)

fact, section 1367.01, a relatively complex and detailed statute, comprehensively governs the delegation of utilization review and management. Other statutes that recognize delegation of utilization review and management are sections 1374.30, subdivision (b) and 1363.5, subdivisions (a) and (b).

3. *The Cases Cited by Appellant Do Not Support the Contention That Blue Shield Was Precluded from Delegating Liability for Health Care Decisions*

Appellant relies on two cases for the proposition that "California case law confirms the rule" that Blue Shield could not "delegate away its liability for making health care benefit decisions." (Boldface omitted.)

Before we explain why neither case is of any assistance to appellant, we note that in this case Blue Shield did not "delegate away" any liability. The sole basis for Blue Shield's liability in this case would be vicarious liability, i.e., imposing liability on Blue Shield because of an act or omission by GSMPA and that is precluded by section 1371.25. Putting the same point another way, because Blue Shield did not commit an act or omission that arguably caused appellant injury, Blue Shield is not liable. Thus, there was nothing to "delegate away."

■ *Hughes v. Blue Cross of Northern California* (1989) 215 Cal.App.3d 832 [263 Cal.Rptr. 850], the first case on which appellant relies, was decided six years before section 1371.25 was enacted in 1995. It was decided 10 years before section 1367.01 was enacted; this section addresses in detail the delegation of powers and functions by a health care service plan. Finally, *Hughes v. Blue Cross of Northern California* was decided 10 years before Civil Code section 3428 was enacted. The last-named provision is the answer to appellant's evident concern that Blue Shield is seeking to escape liability by delegating it. Civil Code section 3428 places real obligations on a health care service plan like Blue Shield[10] but it also requires an exhaustion of the appeals process.[11] The aside in *Hughes v. Blue Cross of Northern California* at page 848, that Blue Cross could not delegate its duty to process claims fairly

---

[10] Subdivision (a) of Civil Code section 3428 provides: "For services rendered on or after January 1, 2001, a health care service plan or managed care entity . . . shall have a duty of ordinary care to arrange for the provision of medically necessary health care service to its subscribers and enrollees, where the health care service is a benefit provided under the plan, and shall be liable for any and all harm legally caused by its failure to exercise that ordinary care when both of the following apply: [¶] (1) The failure to exercise ordinary care resulted in the denial, delay, or modification of the health care service recommended for, or furnished to, a subscriber or enrollee. [¶] (2) The subscriber or enrollee suffered substantial harm."

[11] Civil Code section 3428, subdivision (k).

was valid then, in 1989, when Blue Cross was actually processing claims but it has no application to the instant case which arises under substantially different structural and legal conditions. Those conditions are reflected, among other places, in sections 1371.25, 1367.01 and Civil Code section 3428, all of which were enacted years after *Hughes v. Blue Cross of Northern California* was decided.

*Kotler v. PacifiCare of California* (2005) 126 Cal.App.4th 950 [24 Cal.Rptr.3d 447], the second case on which appellant relies, is also distinguishable. While it is true that *Kotler* concluded that, on a motion for summary judgment, it was a question of fact whether a delay of six weeks in arranging for a specialist was reasonable, in *Kotler* the health care service plan denied two appeals by the patient that sought reimbursement for a specialist the patient saw on his own because of the delay. (*Id.* at pp. 956–957.) Nothing resembling the foregoing, especially the two unsuccessful appeals to the health care service plan itself, can be found in the case before us.

4.  *Appellant's Contract Provides That the Initial Decision Is to Be Made by the Medical Group or Provider*

Appellant cites selectively from her contract, i.e., her "Evidence of Coverage" (EOC), to support her claim that Blue Shield promised that it would not delegate health care decisions to the medical group or provider.

While there is some general language to this effect (the determination whether services are medically necessary is to be made by the plan, i.e., Blue Shield), documents referenced by, and incorporated into, the EOC contradict this claim. Thus, the standards for utilization review state that Blue Shield's policy is to abide by the provider's initial decisions but that the appeal process can overturn that decision. Considering that appellant was well aware of the fact that she was not being treated by Blue Shield but by her primary care physician and GSMPA, she was of course not misled by the broad introductory language of the EOC. Be that as it may, because Blue Shield retained the ultimate say about what services were medically necessary by virtue of the appeal process, it is really not off the mark to say that the determination was to be made by the plan.

Appellant also points to a provision in the EOC that states that Blue Shield is to be held accountable or liable to appellant for the obligations created by the EOC. Contrary to appellant's claim, this does not mean that it is only Blue Shield who was to make medical decisions. The EOC and the documents incorporated into the EOC make it quite clear that, in the first place, it is the provider and not Blue Shield who was to make the initial decision.

### 5. *Common Law Principles Do Not Override Section 1371.25*

Appellant contends that there are public policy reasons why Blue Shield cannot delegate its liability for injuries caused by a delegated decision and that Blue Shield is liable as a principal for the acts of its agent, GSMPA.

The Legislature has clearly set forth the public policy that is to govern this case. That policy, expressed in section 1371.25, precludes the imposition of vicarious liability on Blue Shield. We have not been given a reason, and cannot conceive of one, that would empower us to override the explicit dictate of section 1371.25 and replace it with agency principles or even a broader concept of nondelegable duty that would impose vicarious liability on Blue Shield.

### 6. *Section 1371.25 Is Not Limited to Medical Malpractice Liability*

Appellant contends that the "only liability that section 1371.25 is intended to insulate the [health care service] plans from is medical malpractice liability, not their own direct liability for the failure to provide benefits." The thrust of this argument is that it cannot have been the intention of the Legislature to insulate health care service plans from liability for the denial of medical services.

There are three reasons why this argument is without merit. First, it has no support whatever in the text of section 1371.25. Second, the liability of health care service plans for denial or delay of health care services is laid down in and regulated by Civil Code section 3428. (See fn. 10, *ante*, and accompanying text.) Health care service plans are therefore not insulated from this form of liability. Third, health care service plans "are not health care providers under any provision of law" (Civ. Code, § 3428, subd. (c)) and therefore cannot be liable for medical malpractice. There is therefore no need to shield them from medical malpractice actions.

### 7. *The Jury Instructions Were Correct*

There is no evidence that Blue Shield itself committed an act or omission for which it would be directly liable. Thus, there was no reason to instruct the jury in terms of the third sentence of section 1371.25. (See fn. 6, *ante*.)

For the reasons set forth in our opinion, the instructions regarding the delegation of utilization review and management were correct, as was the trial court's decision not to instruct the jury that Blue Shield's function and duties could not be delegated.

## DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

Cooper, P. J., and Bigelow, J., concurred.

A petition for a rehearing was denied December 12, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 25, 2009, S169378.