Filed 7/14/21  Mulberg v. Amster CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| FRANK MULBERG,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>PATRICIA DAVIS DANEMAN AMSTER,<br><br>        Defendant and Respondent. | A158954<br><br>(Marin County<br>Super. Ct. No. CIV 1703628) |

Plaintiff Frank Mulberg, a licensed attorney appearing in propria persona, appeals from a posttrial judgment the trial court entered in favor of defendant Patricia Amster after it rejected all six causes of action Mulberg alleged in his complaint.[1]  The court rejected three of the causes based on its finding that Amster paid Mulberg $62,820 for attorney fees she owed him in her individual capacity.  We agree with Mulberg that substantial evidence does not support this finding, and we therefore reverse the court's rulings on those three causes and remand for further proceedings.  We otherwise affirm.

---

[1] For purposes of simplicity we refer to the six claims as causes of action although, as we explain further below, some are more accurately described as "common counts."

# I.
## BACKGROUND

The parties have spent years litigating various disputes. This one arose after Amster hired Mulberg from 2008 to 2012 to help her with matters related to an anticipated inheritance. During this time, Amster paid Mulberg for some, but not all, of the attorney fees incurred.

When her mother died in 2011, Amster inherited property titled in a trust and, with the apparent authority to do so, she appointed Mulberg as trustee. It is uncontested that, as the trial court found, Mulberg used trust funds to pay himself the attorney fees that Amster incurred in her individual capacity. Specifically, Mulberg used trust assets to pay himself $35,000 in October 2011 and $27,819.75 in January 2012. The total amount was $62,819.75, which we, as do the parties, round to $62,820. After Mulberg made these payments to himself, he sent Amster a statement in April 2012 notifying her that her individual attorney fees had been paid in full.

In 2013, the parties' relationship deteriorated, and in 2014 probate proceedings were initiated, with Amster petitioning to remove Mulberg as trustee, and Mulberg cross-petitioning to challenge Amster's right to remove him and to seek approval of the estate's accounts. A probate trial was held in 2015, and one of the main issues was whether Mulberg had paid himself excessive trustee fees, which the evidence showed amounted to over $500,000. In its ruling, the probate court removed Mulberg as trustee, approved a trustee fee for him of $227,897.59, representing "1% of the total trust corpus per annum," and ordered him to return—in what the parties refer to as a "surcharge"—more than $200,000 to the estate.[2]

---

[2] The exact amount Mulberg was ordered to return is immaterial for purposes of this appeal. The trial court found that the amount was $226,222.16, while Mulberg insists that it was $267,222.16.

Mulberg appealed, and we affirmed the probate court's decision. (*Amster v. Mulberg* (Nov. 18, 2016, A146374) [nonpub. opn.].) Mulberg thereafter reimbursed the estate the amount ordered, with interest.[3] He then sent Amster a new bill for the $62,820, plus interest. After Amster refused to pay, Mulberg filed this suit. In his complaint, he asserted six causes of action: promissory fraud, breach of contract, account stated, open book account, quantum meruit, and unjust enrichment. Amster answered with a general denial, and she also asserted 33 affirmative defenses.

After a bench trial, the trial court ruled against Mulberg on all his causes of action, and it therefore did not consider Amster's affirmative defenses. The court then entered judgment in Amster's favor.

II.

DISCUSSION

A.    *The Standards of Review*

We review factual determinations made after a trial for substantial evidence. In doing so, "[o]ur authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630–631.) The testimony of a single witness may constitute substantial evidence in support of the judgment. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) "Even in cases where the evidence is undisputed or uncontradicted, if two or more different inferences can reasonably be drawn from the evidence this court is without power to substitute its own inferences or deductions for those of the trier of fact, which must resolve such conflicting inferences in the absence of a rule of

---

[3] Mulberg satisfied the probate judgment in March 2017. Thus, he "had full compensation for his services (and use of the [$62,820]) for more than five years" before the money was returned to the estate.

3

law specifying the inference to be drawn. We must accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment." (*Howard,* at p. 631.) To the extent the trial court's determinations rest on purely legal issues, our review is de novo. (*Snow v. Woodford* (2005) 128 Cal.App.4th 383, 393.)

B. *The Trial Court Properly Rejected Mulberg's Cause of Action for Promissory Fraud.*

In its ruling, the trial court rejected Mulberg's claim of promissory fraud, finding "no proof of [Amster's] fraudulent intent." Mulberg argues that this ruling was erroneous because he proved all the claim's elements. We perceive no error.

The elements of fraud " 'are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) " 'Promissory fraud' is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud." (*Ibid.*)

The trial court found that Amster intended to fulfill her obligation to pay her individual attorney fees to Mulberg. This finding is supported by substantial evidence, which includes the undisputed evidence that Amster had been making payments on the fees she owed and that trust assets were used to pay off that amount before the probate court ordered the money returned to the estate as part of the surcharge. Although the extent of Amster's acquiescence in Mulberg's use of the trust funds to pay the individual fees obligation is contested, Mulberg stated that Amster approved

4

the trust payment, and no evidence was presented that Amster disapproved of it at the time it was made. Collectively, this evidence constitutes more than sufficient evidence to support the court's finding that Amster intended to pay the debt. Therefore, the court properly rejected Mulberg's promissory fraud cause of action.

C. *No Substantial Evidence Supports the Trial Court's Finding that Amster Paid Mulberg for the Individual Attorney Fees She Incurred.*

We come to a different conclusion, however, regarding the causes of actions that the trial court rejected on the basis of its finding that Amster paid Mulberg for the individual attorney fees she incurred. We agree with Mulberg that there was "no substantial evidence to support the [trial] court's conclusion that Amster made any unconditional payment of $62,820 to [him] to satisfy her existing outstanding balance." Because there was no substantial evidence to support the finding, the court incorrectly relied on it to reject Mulberg's claims based on breach of contract, account stated, and open book account.

1. Breach of contract

We first consider the trial court's ruling on the cause of action for breach of contract. "The elements of a cause of action for breach of contract are well known. A plaintiff must establish: the existence of a contract, plaintiff's performance (or excuse for nonperformance), defendant's breach, and resulting damages." (*Professional Collection Consultants v. Lujan* (2018) 23 Cal.App.5th 685, 690 (*Lujan*).) Whether a party breached a contract is a question of fact, which we ordinarily review for substantial evidence. (*Kotler v. PacifiCare of California* (2005) 126 Cal.App.4th 950, 956.) But when the operative facts are not in dispute, our review is de novo. (See, e.g., *Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) Here,

5

most of the operative facts are undisputed, suggesting the less deferential de novo standard applies, but we conclude that the court's finding that Amster paid the $62,820 (and therefore did not breach the contract) cannot be sustained under either standard.

The trial court held that although the parties had a contract requiring "Amster . . . to pay Mulberg for his services," the contract was not breached. This holding was based on the court's finding that "Mulberg's own evidence proved that as of April 2012 he had been paid in full," since as trustee he used trust assets to pay himself for the fees Amster incurred in her individual capacity.

The trial court also found, however, that, while "the evidence presented was less than precise, it appears that part of the surcharge [ordered to be returned to the estate by the probate court] included fees Mulberg had paid himself out of [the] trust for his prior legal services to Amster." Amster affirmatively acknowledges in her appellate briefing that the probate court "applied the surcharge to these funds." The court did not consider it to be consequential that Mulberg was required to return the $62,820 to the estate as part of the surcharge. It reasoned that "Mulberg offer[ed] no legal authority for the proposition that [Amster's attorney fee] debt was somehow 'resurrected' (his words) as a result of the probate action," and it held that an "order of the [probate] court (affirmed on appeal) cannot be imputed to Amster as an act in breach of contract."

To the contrary, the fact that Mulberg was required to return the $62,820 to the estate *is* consequential. True enough, both parties agree that Amster's individual fees obligation had been paid by the estate before the probate court ordered Mulberg to return the money. The trial court believed that Mulberg's payments to himself with estate funds meant that "Amster . . .

6

*in fact did* . . . pay Mulberg for his work." But the uncontested evidence is that it was the estate, not Amster, that paid the fees, and Mulberg was ordered to return this money to the estate as part of the surcharge. In turn, this left Amster's individual fees obligation unsatisfied. Her contractual obligation to pay fees incurred in her individual capacity was not extinguished simply because estate assets were improperly used in a failed attempt to pay off the obligation. While we agree with the court that the debt was not "somehow 'resurrected' . . . as a result of the probate action," we think it is accurate to say that Amster's debt remained unsatisfied, even if the parties might have intended for the debt to be paid with estate assets.

Amster argues that Mulberg is collaterally estopped from denying that the bill was satisfied, but she is mistaken.[4] She contends that Mulberg is precluded from now litigating an "issue that was 'actually litigated' " in the probate proceeding. But collateral estoppel does not apply, because the issue here is different, and it was not actually litigated in the probate proceeding. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [elements required for application of collateral estoppel].)

The issue in the probate proceeding was whether Mulberg paid himself excessive trustee fees. The probate court found that he had, and we affirmed the court's order requiring him to reimburse the estate the amount of the surcharge, which included the payments for Amster's individual attorney

---

[4] At one point in her appellate brief, Amster asserts that Mulberg's claim is barred because of "judicial estoppel," but the argument she advances and the law she cites reveal she means to contend that the claim is barred by collateral estoppel because the probate court determined that Mulberg used trust assets to pay her individual attorney fees obligation. (See *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 835 [discussing difference between judicial and collateral estoppel].)

7

fees. (*Amster v. Mulberg, supra*, A146374.) In doing so, we concluded that sufficient evidence supported the probate court's finding that the amount was part of the excessive payment made "in connection with [Mulberg's] services as trustee." (*Ibid*.) We rejected Mulberg's theory that he should not have to return the $62,820 to the estate because it was "previously owed attorney fees earned prior to his trusteeship."[5] (*Ibid*.) Here, however, the parties agree that the surcharge included the amount Mulberg used to pay Amster's individual attorney fees, and no contrary determination was made in the probate proceeding.

The fact that Mulberg unsuccessfully tried as trustee to use trust assets to pay off Amster's individual attorney fees obligation does not support the conclusion that the debt was satisfied and extinguished. Because no substantial evidence supported the trial court's finding that Amster satisfied her contractual obligation to pay the fees she incurred in her individual capacity, we must reverse the court's ruling that there was no breach of contract. (See *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.) We make no determinations regarding the strength of Amster's affirmative defenses, and we leave it for the trial court on remand to consider those defenses in the first instance.

### 2. Account stated and open book account

Mulberg asserted claims for account stated and open book account as well. The trial court also rejected both of these claims based on its finding that Mulberg had been paid the $62,820 from the estate assets.

Each of these claims is technically a common count, which " 'is not a specific cause of action . . . , [but] rather . . . a simplified form of pleading

---

[5] We are at a loss to understand why Mulberg argued that he did not have to return the $62,820 to the estate, in light of his unabashed admission that he, as the estate's trustee, used estate assets to pay a non-estate debt.

normally used to aver the existence of various forms of monetary indebtedness.' " (*Lujan, supra*, 23 Cal.App.5th at p. 690.) A common count "is proper whenever the plaintiff claims a sum of money due, either as an indebtedness in a sum certain, or for the reasonable value of services, goods, etc., furnished. It makes no difference that the proof shows the original transaction to be an express contract, a contract implied in fact, or a quasi-contract." (4 Witkin Cal. Proc. (5th ed. 2020) Pleading, § 554.)

" 'A "book account" is "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith . . . ." ' [Citation.] The creditor must keep these records in the regular course of its business and 'in a reasonably permanent form,' such as a book or card file. (Code Civ. Proc., § 337a.) 'A book account is "open" where a balance remains due on the account.' " (*Lujan, supra*, 23 Cal.App.5th at pp. 690–691.) " 'An account stated is "an agreement based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing." ' [Citation.] 'When an account stated is " 'assented to, either expressly or impliedly, it becomes a new contract.' " . . . Accordingly, an action on an account stated is not based on the parties' original transactions, but on the new contract under which the parties have agreed to the balance due.' " (*Id.* at p. 691.)

Mulberg maintained that he sent invoices to Amster, and they established an account stated or an open book account. The trial court found that the "main evidentiary problem with accepting Mulberg's invoices . . . is that they demonstrated he had been paid in full." But as we have determined, no substantial evidence supports the finding that Amster

9

satisfied her contractual obligation to pay Mulberg for the $62,820 in attorney fees she incurred in her individual capacity. We therefore reverse the court's rulings as to these common counts. (See *Bowers v. Bernards, supra,* 150 Cal.App.3d at pp. 873–874.)

> D.    *The Trial Court Properly Rejected Mulberg's Equitable Claims for Quantum Meruit and Unjust Enrichment.*

We lastly consider, and affirm, the trial court's rulings on Mulberg's equitable claims for quantum meruit and unjust enrichment.

These doctrines are interconnected. To state a claim for quantum meruit, a plaintiff must allege performance of certain services for the defendant, the reasonable value of those services, that the services were rendered at the special instance and request of the defendant, and that the services are unpaid. (*Haggerty v. Warner* (1953) 115 Cal.App.2d 468, 475.) Quantum meruit " 'refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." [Citation.] To recover in quantum meruit, a party need not prove the existence of a contract [citations], but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made." ' " (*Unilab Corp. v. Angeles-IPA* (2016) 244 Cal.App.4th 622, 642.) "However, it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419.)

" 'The right to restitution or quasi-contractual recovery is based upon *unjust enrichment*. Where a person obtains a *benefit* that [the person] may not *justly retain*, the person is unjustly enriched. The quasi-contract, or

10

contract "implied in law," is an *obligation* . . . created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to [that party's] former position by return of the thing or its equivalent in money.' " (*Unilab Corp. v. Angeles-IPA, supra,* 244 Cal.App.4th at p. 639.)

In rejecting Mulberg's equitable causes, the trial court observed that equitable relief is generally not available when an obligation, such as Amster's debt for her individual attorney fees, is founded in contract. But the court held that even if there had been no contract, "the evidence was insufficient to support a finding of unjust enrichment." The court pointed out that in imposing the surcharge the probate court had found that "Mulberg's liability to the trust came about in large measure because of his inadequate record-keeping, his breach of fiduciary duties, and his failure to abide by the rules applicable to trustees. The factual circumstances do not show that Amster was unjustly enriched here or that Mulberg was unfairly aggrieved." Stated otherwise, the court found that even if there had been no contract Mulberg would not be entitled to equitable relief as a result of his own conduct and malfeasance.

We review a trial court's exercise of its equity powers for an abuse of discretion. (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 771.) "Under that standard, we resolve all evidentiary conflicts in favor of the judgment and determine whether the court's decision ' "falls within the permissible range of options set by the legal criteria." ' " (*Ibid.*) Applying the abuse of discretion standard here, we cannot say that the court's rationale in denying equitable relief to Mulberg fell outside such a range of options. Accordingly, we affirm its ruling rejecting his equitable claims.

## III.
### DISPOSITION

The trial court's rulings on the claims for promissory fraud, quantum meruit, and unjust enrichment are affirmed.  The rulings on the claims for breach of contract, account stated, and open book account are reversed.  The judgment is vacated, and the matter is remanded for further proceedings on the latter three claims, including a consideration of Amster's affirmative defenses.  The parties shall bear their own costs on appeal.

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Banke, J.


*Mulberg v. Amster*  A158954

13