**Robert D. GENTRY, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and Does 1–100, Defendants.**

**No. CIV. S–09–0671 LKK/GGH.**

United States District Court, E.D. California.

July 26, 2010.

817; *Putensen,* 12 Cal.App.3d at 1076–77, 91 Cal.Rptr. 319; CACI § 1222.

Bradley J. Swingle, Colleen Frances Van Egmond, William Allen Lapcevic, Arata, Swingle, Sodhi & Van Egmond, Modesto, CA, for Plaintiff.

Cherie Marie Sutherland, Robert Stewart McLay, Hayes, Davis, Bonino, Ellingson, McLay & Scott, LLP, Redwood City, CA, Stephen M. Hayes, Hayes, Davis, Ellingson, McLay & Scott, Redwood Shores, CA, for Defendants.

## ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiff brings an action for breach of the implied covenant of good faith and fair dealing and for breach of contract arising from defendant's handling of his underinsured motorist ("UIM") claim. Defendant moved for summary judgement on both claims.

## I. BACKGROUND

Plaintiff was injured in an automobile accident on August 24, 2004, when another driver ran a red light at an intersection in Modesto, California. The police concluded that the other driver caused the accident. Decl. of Andre Snowden filed in support of Def.'s Mot. Summ. J. ("Snowden Decl.") Ex. 1. Plaintiff filed a UIM claim after sustaining knee injuries in an automobile accident. His insurance policy provided a limit of $100,000 for UIM coverage, minus the amount covered by the other driver's insurance. Plaintiff's claim was settled more than four years after the date of the accident.

### A. Knee Injury

Plaintiff reported knee pain at the scene. On September 7, 2004, plaintiff sought treatment at Sutter Gold Medical Foundation for bi-lateral knee pain. Plaintiff informed the physician that his knees hit the

dashboard in the accident. Decl. of Mathew Jaime filed in support of Def.'s Mot. Summ. J. ("Jaime Decl.") Ex. 1. The physician's report noted that internal derangement was suspected. *Id.* On September 23, 2004, plaintiff consulted with an orthopedic surgeon due to continuing pain in his knees. *Id.* Ex. 2.[1] A subsequent MRI of the left knee revealed changes to the horn and body of the lateral meniscus.[2] *Id.*

Dr. Robert Cash ("Dr. Cash") performed a left knee arthroscopy on December 22, 2005. Dr. Cash testified that the surgery would likely have not been required if plaintiff's knee had not been injured in the accident. Dep. of Dr. Cash 31–32. Defendant's medical examiner, Dr. Peter Salamon ("Dr. Salamon"), concurred that the torn meniscus and the resulting surgery was related to the accident. Dep. of Dr. Salamon 18.

### B. Defendant's Processing of the UIM Claim

### 1. Plaintiff Submits UIM Claim

On November 16, 2006, plaintiff settled his claim with the adverse driver's insurer for $25,000, the policy limit. On December 23, 2006, plaintiff's counsel made a formal demand to defendant for UIM benefits of $75,000 for medical expenses and loss of wages, and a $5,000 waiver of medical payment reimbursement. Plaintiff's counsel estimated the value of the claim to be in excess of $105,000, but was willing to settle for a total of $80,000. Snowden Decl.

Ex. 4. The letter also identified medical specials totaling $27,476.50. *Id.*

On December 28, 2006, defendant asked plaintiff's counsel for medical documentation and proof of the USAA settlement. *Id.* Ex. 5. On January 30, 2007, defendant sent a second letter essentially making the same request. *Id.* Ex. 6. On February 5, 2007, defendant received plaintiff's medical records and a renewed policy limit demand (the second demand) from plaintiff's counsel.[3] *Id.* Ex. 7. Snowden began processing the claim.

### 2. Snowden Evaluation and First Offer

On February 6, 2007, Snowden, the claims adjuster, sent plaintiff's counsel a letter requesting additional information regarding the loss of income claim.[4] Snowden then evaluated the claim and concluded the medical specials totaled $5,301.58, despite the January 31, 2007 letter from plaintiff's counsel identifying over $27,000 in medical specials. *Id.* Ex. 9. Plaintiff's expert testified that the medical specials were improperly reduced. Peterson Decl. filed in support Opp'n ("Peterson Decl.") ¶ 17(D)(3).

On February 28, 2007, defendant offered plaintiff $4,886.12 based on Snowden's evaluation of the claim. Snowden Decl. Ex. 11. Plaintiff's expert opined that this offer was a "low-ball offer" in violation of Insurance Code § 790.03(h)(13) because it

---

1. The exhibit contains the report for the right knee. However, because the material facts related to the left knee MRI are undisputed (Pl.'s Statement of Undisputed Facts, 42), the court accepts them as true and incorporates them herein.

2. Prior to the accident, plaintiff had undergone arthroscopic surgery on the left knee in January 2003, and for the right one in March 2000.

3. Plaintiff asserts that this second policy demand again advised defendant of the medical

specials totaling $27,476.50. Pl.'s Sur–Reply at 3. However, an authenticated copy of the letter was not provided by either party.

4. Defendant's Reply asserts that it was only from the January 31, 2007 demand letter it learned about a loss of income claim. However, the December 23, 2006 demand letter states "[i]n addition to his medical expenses, Mr. Gentry has a wage loss claim." Snowden Decl. Ex. 4.

failed to provide a reasonable explanation of the basis in the policy for the offer in relation to facts or applicable law. *Id.* (D)(3)(I) (14:6–14). Plaintiff's counsel rejected this offer on March 8, 2007, reiterating his settlement demand. Snowden Decl. Ex. 12. Plaintiff's counsel also requested the matter be forwarded to defense counsel so it could proceed to arbitration. *Id.* The State Farm Claims File indicates that on March 12, 2007, defendant established a funding reserve in the amount of $7,886.12 and the matter was referred to counsel. Swingle Decl. filed in support of Sur–Reply ("Swingle Sur–Reply Decl.") Ex. C CF 0102.

### C. Defendant Retains Counsel

On March 2007, defendant retained counsel, Matthew Jaime ("Jaime"), who then began discovery. Jaime Decl. ¶ 5.

### 1. Jaime Initial Evaluation and Payment

On July 31, 2007, Jaime prepared his initial evaluation of plaintiff's claim after reviewing medical records, interrogatories, and depositions. *Id.* ¶ 23, Ex. 7. On August 9, 2007, defendant issued payment to plaintiff in the amount of $4,886.12. Snowden Decl. Ex. 14. This amount was exactly the same amount determined by Snowden despite the fact that Snowden's evaluation was conducted without the benefit of medical records and other supporting documentation. The August 9, 2007 letter failed to clarify the medical payment reimbursement. On September 13, 2007, defendant's employee, Miguel Diaz, noted in the claim file that the medical payment claim was concluded and reimbursement was waived. Swingle Sur–Reply Decl. Ex. B CF 0096. Defendant provided no evidence that the reimbursement waiver information was communicated to plaintiff.

### 2. Independent Medical Examination

On January 22, 2008, more than one year after plaintiff's counsel identified over $27,000 in medical specials, Dr. Salamon conducted a medical examination of plaintiff. The first report concluded that the accident resulted in a tear of plaintiff's meniscus, but that some of plaintiff's symptoms "need to be apportioned to the degenerative change already present in his left knee." Jaime Decl. Ex. 19. Two subsequent reports were issued in response to queries from Jaime. The final one dated February 21, 2008, asserted that plaintiff's change in occupation was unrelated to the accident. On February 26, 2008, Dr. Salamon's deposition was taken. He testified that plaintiff's torn meniscus and need for surgery was the result of the accident and that there was no evidence in the medical records prior to the accident that plaintiff was unable to work in his business because of knee pain. Swingle Decl. Ex. C (Salamon Dep.).

### 3. Evaluation Loss of Wages

On June 16, 2008, Jaime provided his re-evaluation of plaintiff's wage loss claims. Jaime Decl. Ex. 25. Jaime estimated that the loss of wages had a value of $3,500. *Id.* Jaime concluded that plaintiff's decision to close the landscaping business was unrelated to the accident. *Id.* Therefore, he determined the only loss of wages was during the approximately one month recovery period from the left knee arthroscopy. *Id.*

### D. Arbitration

On August 16, 2007, Jaime proposed to plaintiff's counsel that the UIM claim be submitted to mediation. Van Egmond Decl. in support of Sur–Reply ("Van Egmond Decl.") Ex. A. On September 17, 2007, plaintiff's counsel declined the offer of mediation. *Id.* Ex. B. On September 19, 2007, plaintiff's counsel filed an order compelling arbitration. Jaime Decl. Ex. 8. On September 26, 2007, defendant agreed to set the matter for arbitration, over six

months after plaintiff's initial demand for arbitration was made. *Id.* Ex. 9.

On November 5, 2007, plaintiff's counsel for a third time offered to settle for $75,000 in new money and a $5,000 medical payment reimbursement waiver. *Id.* Ex. 12. On November 7, 2007, plaintiff served a Cal.Code Civ. P. § 998 offer in these amounts upon defendant. *Id.* Ex. 13.

On January 2, 2008 an arbitrator was selected. *Id.* Ex. 16. On January 16, 2008, the hearing date was confirmed by plaintiff's counsel for March 19, 2008. *Id.* Ex. 18. The arbitration was rescheduled to September 10, 2008. *Id.* Ex. 27.

### 1. Report and Increased Offer

On July 16, 2008, Jaime issued a pre-arbitration report. The report incorporated a range of $3,500 to $7,000 for lost wages. *Id.* Ex. 26. Further, it reduced the medical specials from $24,892 claimed by plaintiff to $7,555, without any explanation other than "adjustments." [5] *Id.* On August 8, 2008, defendant increased its offer to plaintiff to $12,500 in new money, without explanation as to the increased figure. *Id.* ¶ 50. Plaintiff's expert opined that the August 8, 2008 letter violated Insurance Code § 790(h)(13) because it failed to provide facts regarding how the settlement figures were determined. *Id.* 14(g)-(h) (20:9–20).

### 2. Decision

On September 10, 2008, the matter was arbitrated. A decision was issued on September 22, 2008. Plaintiff was awarded a total of $101,794.44. Jaime Decl. Ex. 27. After crediting the $25,000 USAA settlement and $3,014 medical payment, plaintiff was awarded $73,690.44. *Id.* On October 1, 2008, defendant filed a motion to have the award reduced to $7,880.41 arguing that plaintiff was entitled to the amount paid by plaintiff's health insurer, not the amount billed. *Id.* Ex. 28. Plaintiff objected and noted his concern that the motion "is another way to delay the payment of the amount owed." *Id.* Ex. 30. The motion was denied. *Id.* Ex. 31. On October 22, 2008, defendant issued payment in the amount of the arbitrator's award. *Id.* Ex. 32. A check for $585.51 was issued for interest, in response to a third request from plaintiff's counsel. *Id.* Ex. 33 and 34. More than four years had lapsed since the date of the accident, August 27, 2004.

## II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 853 (9th Cir.1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First*

---

**5.** Plaintiff claims $27,476.50 in medical specials in its December 23, 2006 letter. Jaime's uses a total $24,892 in his reports. The discrepancy is not explained by either party.

*Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.*, 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *see also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*)); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. *See Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

## III. ANALYSIS

### A. Breach of Implied Covenant of Good Faith and Fair Dealing.

#### 1. Summary of California Law on Insurance Bad Faith

■ Under California law, "insurance bad faith" refers to a breach of the implied covenant of good faith and fair dealing as that covenant applies to insurance policies. An insurer breaches this covenant when it acts unreasonably in discharging its obligations under the policy. *Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 430, 58 Cal.Rptr. 13, 426 P.2d 173 (1967). Although a claim for breach of the implied covenant of good faith and fair dealing generally sounds in contract, in the insurance context, such a claim also sounds in tort. *Jonathan Neil & Assoc. v. Jones*, 33 Cal.4th 917, 932, 16 Cal.Rptr.3d 849, 94 P.3d 1055 (2004).

■ The elements of a claim for tortious insurance bad faith are that benefits due under the policy were withheld and that the withholding was unreasonable. *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 720, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (2007). Even where benefits are ultimately found to be due, a withholding was reasonable, and therefore not in bad faith, if the insurer conducted a "thorough and fair" investigation, after which there remained a "genuine dispute" as to coverage liability. *Id.* at 720, 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (quoting *Chateau Chamberay Homeowners Ass'n v. Associated Internat. Ins. Co.*, 90 Cal.App.4th 335, 347, 108 Cal.Rptr.2d 776 (2001)); *see also Guebara v. Allstate Insurance Company*, 237 F.3d 987, 996 (9th Cir.2001) (applying California law).

■ Thus an insurer is not obligated to pay every claim made by an insured. However, it cannot deny the claim "without fully investigating the grounds for its denial." *Wilson* at 720–21, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (quoting *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal.3d 208, 215, 228 Cal.Rptr. 160, 721 P.2d 41 (1986)). An insurer cannot just focus on facts that support its position. Further, delayed payment because of "inadequate or tardy investigations" and "oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable" may also breach the implied covenant. *Brehm v. 21st Century Insurance Co.*, 166 Cal. App.4th 1225, 1236, 83 Cal.Rptr.3d 410 (2008) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36, 44 Cal. Rptr.2d 370, 900 P.2d 619 (1995)).

■ Generally, an insurer who denies or delays payment of policy benefits where there is a genuine dispute as to the existence or amount of coverage will not be liable for bad faith if there is a genuine dispute concern the facts or the interpretation of the policy. *Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082. However, the genuine dispute rule "does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A *genuine* dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Id.* (emphasis in original). The questions of whether an investigation was reasonable and whether a genuine dispute existed are ordinarily questions for the trier of fact. *Id.* at 724, 68 Cal.Rptr.3d 746, 171 P.3d 1082, *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1010 (9th Cir.2004) (citing *Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152, 1161 (9th Cir.2002)).

### 2. Whether State Farm Conducted a Thorough Investigation and Fair Evaluation of Plaintiff's Claim.

■ Defendant argues that its handling of plaintiff's claim was reasonable as a matter of law and that the conduct complained of by plaintiff does not "reach the level of an unreasonable withholding of policy benefits which is required to prevail in an insurance bad faith claim." Def.'s Mem. of P. & A. 17. Defendant contends that it investigated the claim and retained and relied on qualified experts in denying plaintiff's claim. As noted, an insurer has a duty to fully and timely investigate, evaluate and process claims. *Wilson,* 42 Cal.4th at 720–23, 68 Cal.Rptr.3d 746, 171 P.3d 1082. To survive a motion for sum-

mary judgement on a bad faith claim, plaintiff must present evidence of material issues of fact as to the reasonableness of defendant's handling of the claim.

Plaintiff argues that defendant failed to properly investigate plaintiff's claims and was unreasonably dilatory in its investigations. Sur–Reply at 11. Specifically, defendant failed to (1) obtain plaintiff's medical records to evaluate his claim; (2) advise plaintiff of the "Make Whole Rule;" [6] (3)respond to multiple policy limit demands; (4) advise plaintiff of the amount defendant could recover on its medical reimbursement claim; (5) promptly obtain medical and wage records; and (6) have plaintiff submit to an IME.

Plaintiff presented evidence that he made policy limit demands on December 23, 2006 and on January 31, 2007. However, medical records were not obtained by defendant until the matter was referred to Jaime in March 2007. This was so despite plaintiff's request for reimbursement of medical specials that exceeded $27,000. These facts could lead a reasonable jury to find that defendant's unreasonably delayed in obtaining plaintiff's medical records.

With respect to defendant's loss of income investigation, defendant responds that it first learned that plaintiff was bringing such a claim on February 5, 2007, when it received plaintiff's January 31, 2007 demand. However, plaintiff's December 23, 2006 demand letter also included a claim for wage losses. In the letter, plaintiff's counsel communicated a belief that plaintiff's case had a value of over $105,000. Based on the magnitude of the claim relative to policy limits, a medical evaluation could reasonably be determined as warranted at that time. Yet defendant waited until February 6, 2007 to begin an

---

**6.** Under this rule, the insured must be "made whole" before the insurer may enforce its reimbursement claim for medical expenses

paid on insured's behalf. *See Progressive West Ins. Co. v. Yolo County Super. Ct.,* 135 Cal. App.4th 263, 273, 37 Cal.Rptr.3d 434 (2005).

investigation. Moreover, defendant's medical exam of plaintiff occurred on January 22, 2008, more than one year after defendant was notified of the wage loss claim. A reasonable jury could find this investigation into the medical claims and extent of plaintiff's injury to constitute an unreasonable delay.

Plaintiff also argues that defendant did not timely obtain counsel's opinion on the settlement. Plaintiff presented evidence that the defendant's first offer was made without the advice of counsel, particularly as that advice related to the amount of medical specials. Further, plaintiff contends that the medical specials were improperly reduced by Jaime in his pre-arbitration report.[7] The court has reviewed Jaime's report and there is no explanation as to why the medical specials were reduced from the amount plaintiff claimed. The reduction in the medical specials substantially reduced the settlement offers made by defendant.

In *Wilson*, the California Supreme Court found similar conduct by an insurer to preclude summary judgment. 42 Cal.4th at 721–22, 68 Cal.Rptr.3d 746, 171 P.3d 1082. Specifically, the court held that "a jury could find that nothing in the material the claims examiner had received justified [his] conclusions. [The insurer] directs us to no medical report or opinion on the basis of which the claims examiner could reasonably have ignored or disbelieved." *Id.* at 721, 68 Cal.Rptr.3d 746, 171 P.3d 1082. The court continued that

an insurer could not, "consistent with the implied covenant of good faith and fair dealing[, ignore plaintiff's physician's] conclusions without any attempt at adequate investigation, and reach contrary conclusions lacking any discernable medical foundation." *Id.* at 722, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (citations omitted). Here too a reasonable jury could find this conduct to be unreasonable.

■ Plaintiff also asserts that the insurer is liable in tort if it fails to accept a reasonable settlement offer. However, it is "well established that an insurer's tort liability for failure to accept a reasonable settlement offer can arise only with respect to third party, or liability, coverage." *Rappaport–Scott v. Interinsurance Exchange of the Automobile Club*, 146 Cal. App.4th 831, 836, 53 Cal.Rptr.3d 245 (2007). Thus, defendant's failure to accept the multiple policy demands does not give rise to a claim.[8]

In sum, defendant's motion is denied as to the reasonableness of its investigation and evaluation of plaintiff's claim.

### 3. Whether there was a "Genuine Dispute" as to the Value of Gentry's UIM Claim

■ Defendant also argues that it is entitled to summary judgment on plaintiff's bad faith claim because there is evidence of a "genuine dispute" regarding the value and causation of plaintiff's claimed injuries.[9] The genuine dispute rule allows for summary judgement "where the sum-

---

7. The arbitrator decision concluded there is no published authority finding that contractual discounts provided by health-provider contracts are "anything other than a collateral source benefit." Matthew Decl. Ex. 31.

8. Plaintiff cites to the defendant's Claim Service Record (Swingle Sur–Reply Decl. Ex. B) as evidence that it failed to respond to plaintiff's repeated requests for a waiver of the $5,000 medical payment reimbursement. As best the court can discern, however, the activ-

ity log does not demonstrate requests which were ignored. Given that the court finds that a reasonable jury could determine that State Farms's conduct was unreasonable without proving that defendant failed to respond to these alleged repeated requests, the court need not address the sufficiency of plaintiff's evidence as to this argument.

9. Defendant specifically argues there was a genuine dispute as to the nature and scope of plaintiff's injury, highlighted by the evidence

mary judgment record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith." *Wilson,* 42 Cal.4th at 724, 68 Cal.Rptr.3d 746, 171 P.3d 1082.

*Wilson* declined to grant summary judgment for the insurer under the genuine dispute doctrine with facts very similar to the case at bar. *Id.* at 724–26, 68 Cal. Rptr.3d 746, 171 P.3d 1082. Specifically, in *Wilson,* the insurer paid the full policy limits on the plaintiff's UIM claim. Nonetheless, the court reasoned that a reasonable jury could find for plaintiff because there was evidence of the insurer's initial denial of benefits and resulting two-year delay in receipt of benefits. *Id.* The standard set forth in *Wilson* was applied by the California Court of Appeals in *Brehm v. 21st Century Ins. Co.,* 166 Cal.App.4th 1225, 1239, 83 Cal.Rptr.3d 410 (2008), where, unlike in *Wilson,* the insurer had plaintiff examined by a physician. The court reasoned that plaintiff had stated a claim despite this fact because he alleged that the examination was a sham. *Id.* Defendant contends that here, where there is no evidence of a sham, *Brehm* should be distinguished. The court cannot agree. Rather, the California Supreme Court explicitly explained that, "An insurer's good or bad faith must be evaluated in light of the totality of the circumstances surrounding its actions." *Wilson,* 42 Cal.4th at 723, 68 Cal.Rptr.3d 746, 171 P.3d 1082.

The facts described above could demonstrate to a reasonable jury that defendant

acted unreasonably. This is especially so given that Dr. Salamon concurred with Dr. Cash, plaintiff's treating physician, as to the cause of plaintiff's injury. Further, with respect to the arbitrator's award, plaintiff was awarded $73,690.44 in new money as compared to the $75,000 policy limit demand, and the defendant's highest settlement offer was $12,500 in new money.

The court in *Wilson* affirmed that the genuine dispute rule does not alter the standard for summary judgment, "[n]or does the rule alter the standards for deciding and reviewing motions for summary judgment." *Wilson* at 724, 68 Cal.Rptr.3d 746, 171 P.3d 1082. Based on the evidence presented relative to the medical injury and arbitrator award, viewed in the light most favorable to the non-moving party, the court finds that a jury could conclude that there was no genuine dispute. Further, as discussed above, there are issues of triable fact as to whether defendant acted reasonably and in good faith with respect to plaintiff's insurance claim. Accordingly, defendant is not shielded from bad faith liability based on the genuine dispute rule at this stage in the litigation. Thus, the motion for summary judgment on the basis of a genuine dispute is denied.

### 4. Whether State Farm Reasonably Relied on the Advice of Independent Legal Counsel.

■■■ Defendant asserts that it acted reasonably and with proper cause for its actions because it relied in good faith on advice of its legal counsel, Jaime.[10] Reply

---

that the arbitrator's award were "more closely aligned" with defendant's evaluation. Def.'s Mem. of P. & A. at 21. Such a conclusion, however, depends on how plaintiff's offers should be characterized. A reasonable jury could characterize these offers in the manner described above. As such, defendant cannot succeed as a matter of law on this theory.

10. Defendant also argues that reliance on the defendant's medical exam "precludes bad faith liability". Def.'s Mem. of P. & A. at 22. Assuming a jury would find such reliance, defendant provides no case law in support of the contention that bad faith liability is precluded because defendant relied on its paid expert. This is not to say, however, that a jury could not weigh this evidence when de-

at 7. Advice of counsel serves as a defense where insurer reasonably relied on such advice, even if ultimately the attorney's judgment was mistaken. *State Farm Mut. Auto. Ins. Co. v. Super. Ct.*, 228 Cal.App.3d 721, 279 Cal.Rptr. 116 (1991). Defendant relies on *State Farm* to conclude that it is entitled to judgment because it relied on advice from counsel. *State Farm*, however, merely held that, "An insurer may defend itself against allegations of bad faith and malice in claims handling with evidence the insurer relied on the advice of competent counsel." *Id.* at 725, 279 Cal.Rptr. 116. This case did not hold that if an insurer relied on counsel that it cannot be liable for insurance bad faith. Rather the question is whether such reliance was reasonable. Accordingly, it is just one piece of evidence that a jury can consider when determining whether the insurer acted reasonably.

Moreover, plaintiff has presented evidence from which a reasonable jury could also find that it was not reasonable for defendant to rely on the advice of its counsel. This evidence includes Jaime's unexplained reduction of the medical specials claimed by plaintiff. Plaintiff's expert testified that a reasonable insurer would have asked Jaime to explain the reduction because it violated the collateral source rule.[11] Jaime used the lowered medical specials ($7,880 versus nearly $24,892 claimed by plaintiff), to arrive at an estimated jury award of $30,000 to $45,000 (less USAA settlement and advance). Given the significant difference in the figures and plaintiff's repeated statements as to the value of the medical specials, a trier of fact could view defendant's reliance on

Jaime's unexplained opinion to be unreasonable. Thus, defendant is likewise not entitled to summary judgment on plaintiff's bad faith claim because of this defense.

## B. Breach of Contract

██ Defendant moves for summary judgment on plaintiff's breach of contract claim. Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968); *First Commercial Mortgage Co. v. Reece*, 89 Cal. App.4th 731, 745, 108 Cal.Rptr.2d 23 (2001). Further, unreasonable delay in paying policy benefits due "is an actionable withholding of benefits which may constitute a breach of contract as well as bad faith giving rise to damages in tort." *Intergulf Dev. LLC v. Super. Ct.*, 183 Cal. App.4th 16, 20, 107 Cal.Rptr.3d 162 (2010); *see also Kotler v. PacifiCare of California*, 126 Cal.App.4th 950, 956, 24 Cal.Rptr.3d 447 (2005) (finding a triable fact as to whether defendant's delay in providing benefits to plaintiff constituted a breach of contract because the delay was unreasonable); *Schwartz v. State Farm & Casualty Co.*, 88 Cal.App.4th 1329, 1339, 106 Cal. Rptr.2d 523 (2001) ("It is well established that a breach of the implied covenant of good faith is a breach of the contract . . ., and that a breach of a specific provision of

termining whether defendant's conduct was in bad faith.

**11.** Under this rule, "if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted

from the damages which the plaintiff would otherwise collect from the tortfeasor." *Olsen v. Reid*, 164 Cal.App.4th 200, 205, 79 Cal. Rptr.3d 255 (2008) (Moore, J. concurring) (quoting (*Helfend v. Southern Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 6, 84 Cal.Rptr. 173, 465 P.2d 61 (1970))).

the contract is not a necessary prerequisite to a claim for breach of the implied covenant of food faith and fair dealing.") (internal citations omitted).[12] Finally, the state legislature has codified the requirement that contracts must be performed at the time specified or within a "reasonable time." Cal. Civ.Code § 1657.

Plaintiff argues that defendant engaged in the following conduct:

multiple acts which constitute a breach of its insurance contract including (a) failing to reasonably make a good faith offer of the benefit payments owed to Gentry pursuant to the insurance contract; (b) delaying payments lawfully owed to Gentry under the insurance policy; (c) failing to reasonably, promptly and completely investigate Gentry's claim under the insurance contract; (d) and failing to make a good faith effort to obtain prompt, fair and equitable settlement of Gentry's claims for the benefit owed to Gentry under the insurance contract.

Sur–Reply at 9.

Plaintiff's breach of contract claim is essentially based upon defendant's breach of the implied covenant of good faith and fair dealing and upon defendant's unreasonable delay in providing plaintiff with benefits under his insurance contract. Breach of the implied covenant is a breach of contract. *Schwartz*, 88 Cal.App.4th at 1339, 106 Cal.Rptr.2d 523. An unreasonable delay in payment of benefits owed under a contract can support a claim for a breach of contract. *Intergulf Dev. LLC*, 183 Cal.App.4th at 20, 107 Cal.Rptr.3d 162. Plaintiff has presented evidence that a reasonable jury could find that (1) defendant acted in bad faith and (2) defendant unreasonably delayed in making payment under the policy by not conducting a timely investigation of the claim and delaying arbitration and settlement of the claim. Because there are triable questions of fact as to these issues, defendant's motion for summary judgement on plaintiff's breach of contract claim is denied.

**C. Punitive Damages**

■ Defendant argues that plaintiff failed to produce any evidence in support of his claim for punitive damages and, thus, it is entitled to summary judgment on whether punitive damages may be awarded. The standard for punitive damages is statutory. The California Civil Code provides that the plaintiff has to prove "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Civ.Code § 3294. (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. *Id.*

Plaintiff asserts that defendant's conduct amounts to a "conscious disregard" for plaintiff's rights because defendant "unrea-

---

**12.** Defendant relies upon *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F.Supp. 911, 917–18 (C.D.Cal.1994) (J. Letts), in its motion for summary judgment. There the district court expressed policy reasons for his opposition to the "tortification of contract law," 867 F.Supp. at 913–14. These concerns are irrelevant to this court's resolution of defendants motion—the court must follow the law as set forth by the California Supreme Court regardless of the court's opinion as to the merits of that law.

sonably delay[ed] the investigation," creating an investigation " 'not fair' to plaintiff," and failed to accord plaintiff "interest at least equal weight to its own." Sur–Reply at 13. While a jury might conclude that plaintiff failed to make a case for punitive damages the court cannot say that a reasonable jury could not find there was a conscious disregard of plaintiff's right to have his UIM claim resolved in a timely manner.

First, plaintiff provided evidence that defendant waited over six months to agree to arbitration, and evidence that defendant delayed the arbitration. The request to proceed to arbitration was made on March 8, 2007, and the matter was finally arbitrated on September 10, 2008, more than one and one-half years after the initial request was made. Other events that a jury could determine constituted a conscious disregard include the timeliness of the medical and wage loss investigation and the defendant's medical examination. Thus, defendant's motion for summary judgement on plaintiff's demand for punitive damage claim is denied.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment, ECF No. 31, is DENIED in its entirety.

IT IS SO ORDERED.